[No. 14313.   In Bank.—July 21, 1893.]

MARKS ZELLERBACH, APPELLANT, v. CHARLES ALLENBERG ET. AL., RESPONDENTS.

ACTION TO ENJOIN SALE OF PLEDGED STOCKS—FRAUD—ANSWER—AFFIRMATIVE RELIEF TO DEFENDANTS NOT PRAYED FOR.—In an action to enjoin the sale of shares of stock by the defendants claimed to be held in pledge, where an amended and supplemental complaint charged the defendants with fraud and conspiracy to sell the stocks for a fraudulent claim indebtedness, whereas in fact plaintiff owed defendants nothing whatever, and alleged that plaintiff was the owner of the stocks and defendants had an interest therein, and the answer took issue upon the averments of fraud, alleged unpaid loans to the plaintiff for which the stocks were pledged and judgments recovered thereon, which were pleaded as estoppels, but asked for no affirmative relief, upon findings in favor of the defendants upon all the issues, or decree dissolving the injunction adjudging the indebtedness and the lien of the pledge therefor, and awarding affirmative relief to the defendants by directing the shares of stock to be sold under execution to satisfy the indebtedness, is authorized and not erroneous.

ID.—RELIEF EMBRACED IN ISSUES JOINED.—In a case in equity, where issues are joined, the court is authorized to grant any relief consistent with the case, and embraced within the issues, though not specifically prayed for.

ID.—STATUTE OF LIMITATIONS—WAIVER—OBJECTION UPON APPEAL FOR FIRST TIME.—Where the plaintiff alleged the former judgment, which defendants also pleaded as an estoppel and averred that they were procured by fraud, and brought the whole matter before the court for its determination as to their validity, and did not by pleading or otherwise raise any question at the trial as to whether the judgment was barred by the statute of limitations, and an accounting was had as to the indebtedness without objection by either party, the objection cannot be raised on appeal for the first time that the indebtedness was barred by the statute.

ID.—MORAL OBLIGATION OF BARRED INDEBTEDNESS—CONTINUANCE OF PLEDGE—ORDER OF SALE.—The moral obligation to pay indebtedness is not extinguished by the statute of limitations, and even though the debt is barred the debtor cannot recover property pledged to secure its payment, without first paying the debt; and where the objection of the statute is not properly raised upon the record, the court may order the pledged property to be sold to satisfy the indebtedness.

ID.—CORPORATIONS—EXTRA COMPENSATION OF SECRETARY—ACTION OF BOARD OF DIRECTORS—PRESUMPTIONS.—Where the secretary of a corporation has performed extra services for the corporation, and there is no proof that he did not perform them or was overpaid therefor, other than the protest of one director, and it does appear that the secretary as a member of a board of five directors took any share in the passage of the act for his compensation, it will be presumed from the action of the board that he did perform the extra services and received only a reasonable compensation therefor, and the resolution awarding the compensation was authorized and was properly passed.

ID.—DIVIDENDS—DISCRETION OF DIRECTORS.—The apportionment of the net earnings of a corporation to the payment of cash dividends is largely a question of policy entrusted to the discretion of the directors, which, when honestly and intelligently exercised, will not be lightly overruled.

ID.—JUSTIFIABLE DELAY OF DIRECTORS—PLEDGE OF STOCKS—APPLICATION OF NET PROFIT—ACCOUNTING.—Where the further working of a mine involves a large expenditure of money, and a majority of the stock is held in pledge for indebtedness of one of the directors to the other directors, and a net sum of money

99  57
107  610
99  57
110  113
99  57
122  222
99  57
128  319
99  57
140  20
99  57
142  480
99  57
146  11

has been realized by them from the past working of the mine, and the director who has pledged his stocks, denies the indebtedness or their right to hold the stock in any capacity, and is litigating those questions with them, it is a proper exercise of discretion on their part to suspend further operations upon the mine, and not to declare any dividends from the net profits, and to hold the assets in their hands to await the result of the litigation, and they cannot be compelled to account for the money in that litigation.

ID.— FRAUDULENT CONSPIRACY — EVIDENCE — LETTERS BETWEEN DEFENDANTS — RE-BUTTAL OF CONSPIRACY. — Where the plaintiff charged a fraudulent conspiracy between the defendants, which was alleged to have existed prior to their obtaining possession of his stocks, under a false claim of indebtedness, and to have continued until an attempt to sell the stocks of the plaintiff as a pledge for the indebtedness falsely claimed, which sale it was the object of the action to enjoin, letters from one of the defendants to another written prior to the pledge of the stocks are admissible on behalf of the defendants, as part of the *res gestæ*, to disprove the allegation of false claim of indebtedness and fraudulent conspiracy.

ID.— SECONDARY EVIDENCE OF LETTERS OUT OF JURISDICTION — STATUTORY CON-STRUCTION — "LOST" WRITING. — Where letters are proved to have been mailed by one of the defendants to another residing in a foreign jurisdiction, to which replies were received in due course of mail, it must be presumed that the letters mailed were received in the regular course of mail, and a letter beyond the territory of the state is within the meaning of the statute "lost," so as to allow secondary proof of its contents.

ID. — APPEAL — MODIFICATION OF JUDGMENT — CLERICAL ERROR — COSTS. — Where it was admitted that there was a clerical error in the judgment appealed from, and the judgment in other respects was affirmed, *held*, that the judgment should be ordered modified so as to correct the mistake, and that each party should pay his own costs upon the appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Arthur Rodgers, H. L. Gear, T. M. Osmont,* and *J. M. Walling,* for Appellant.

The judgment is erroneous because based on two former judgments, both of which, on their face, *were and are barred by the statute of limitations,* and any possible original lien of such judgments on said stock is extinguished. (Civ. Code, sec. 2911.) The judgment is erroneous, also, because *the pledge lien was extinguished* by lapse of time, period of statute of limitations. E. L. Goldstein never sought to enforce this lien in his action on his note, and so could not claim the enforcement, even in an action to revive his judgment. (Civ. Code, sec. 2911; *Wells* v. *Harter,* 56 Cal. 342; *Jeffers* v. *Cook,* 58 Cal. 151.) Plaintiff

should have been credited with his share of the $22,000 surplus Altoona Company's assets. (Civ. Code, secs. 1852, 2997, 3529 ; Jones' Pledges, sec. 403; *Gatz* v. *Holliday*, 8 Mo. App. 119.)

*Jarboe & Harrison, Jarboe & Jarboe,* and *Robert H. Countryman,* for Respondents.

This being an action in equity the court properly granted the relief given regardless of the prayer of the complaint. (*In re Doyle*, 73 Cal. 564–568; *Scott* v. *Sierra Lumber Co.*, 67 Cal. 75; Code Civ. Proc., secs. 580, 585; *Hoowe* v. *Kreling*, 93 Cal. 136; *Hurlbutt* v. *Spaulding Saw Co.*, 93 Cal. 55; Pomeroy on Remedies, secs. 83, 84, 580; *Stewart* v. *Levy*, 36 Cal. 159–168; *Truebody* v. *Jacobson*, 2 Cal. 270–281; *Rollins* v. *Forbes*, 10 Cal. 299; *Gimmy* v. *Gimmy*, 22 Cal. 633; *Nevada etc. Co.* v. *Kidd*, 37 Cal. 301–322; *White* v. *Lyons*, 42 Cal. 279; *McPherson* v. *Weston*, 64 Cal. 275–279.) The merger of the principal debt into a judgment does not destroy the pledgee's right to hold the collateral, since nothing but the actual satisfaction of the debt can do that. (*Sonoma Valley Bank* v. *Hill*, 59 Cal. 107–110; *Ehrlich* v. *Ewald*, 66 Cal. 97; *Brandt* v. *Thompson*, 91 Cal. 458–462; 18 Am. & Eng. Encycl. of Law, p. 679 ; Jones on Pledges, secs. 540–663.) Even though the debt for which the collateral is security is barred by the statute of limitations, the pledgor cannot recover the possession of the property without paying the debt. (Jones on Pledges, sec. 582; 18 Am. & Eng. Encycl. of Law, pp. 734, 735; *Cross* v. *Eureka Lake etc. Co.*, 73 Cal. 302; 2 Am. St. Rep. 808; *Whitmore* v. *San Francisco Sav. Union*, 50 Cal. 150; *Grant* v. *Burr*, 54 Cal. 298; *Spect* v. *Spect*, 88 Cal. 437; 22 Am. St. Rep. 314.) Whether or not the right to enforce the debt is barred, the plaintiff can redeem only by performing the act for the performance of which the pledged property is a security. (Civ. Code, secs. 2905, 3521, 3523, 3527; *Sonoma Valley Bank* v. *Hill*, 59 Cal. 110; *Ehrlich* v. *Ewald*, 66 Cal. 97; *Cross* v. *Eureka Lake etc. Co.*, 73 Cal. 302; 2 Am. St. Rep. 808 ; *Murdock* v. *Clarke*, 90 Cal. 442.) The apportionment of net earnings of a corporation to the payment of cash dividends is one of policy entrusted to the discretion of the directors. (*Excelsior W. & M. Co.* v. *Pierce*, 90 Cal. 131.) The contention that the payment of the $2,400 to Allenberg was unauthorized

is without merit, as it does not appear that either the defendant Goldstein or the defendant Allenberg, as directors of the company, voted in favor of the resolution to pay that sum of money to Allenberg, so that the statement fails to sustain the assignment of error upon that point. (*Neall* v. *Hill*, 16 Cal. 149; 76 Am. Dec. 508; *Rosborough* v. *Shasta River Canal Co.*, 22 Cal. 556; *Barstow* v. *City R. R. Co.*, 42 Cal. 465; *Smith* v. *Woodville C. S. M. Co.*, 66 Cal. 398; *Missouri R. R. Co.* v. *Richards*, 8 Kan. 101; *Grandy* v. *Pine Hill Coal Co.*, 9 S. W. Rep. 414, Ky. Ct. App. 1888; *Rogers* v. *Hastings etc. R'y Co.*, 22 Minn. 26.) The court did not commit any error in receiving in evidence the letters of William Goldstein, as they were competent in favor of the defendants as part of the *res gestæ.* (1 Greenleaf on Evidence, secs. 102, 108; *Emma Silver Min. Co.* v. *Park*, 14 Blatchf. 412; *Beaver* v. *Taylor*, 1 Wall. 642; *Lund* v. *Tyngsborough*, 9 Cush. 41; *Riggs* v. *Lindsay*, 7 Cranch, 503; Wharton on Evidence, sec. 1102; *Thorndike* v. *Boston*, 1 Met. 247; *Allen* v. *Duncan*, 11 Pick. 308; *McAllister* v. *Engle*, 52 Mich. 60; *Insurance Co.* v. *Mosley*, 8 Wall. 408; *Pennsylvania Co.* v. *Weddle*, 100 Ind. 141; *Tait* v. *Hall*, 71 Cal. 152; Code Civ. Proc., secs. 1850, 1870; subd. 7. See also *Fellowes* v. *Williamson*, 1 Moody & M. 306; *Vacher* v. *Cocks*, 1 Moody & M. 353; *Scott* v. *Middleton etc. R. R. Co.*, 86 N. Y. 208; *Tompkins* v. *Saltmarsh*, 14 Serg. & R. 275; *Rex* v. *Whitehead*, 1 Car. & P. 67.) Moreover, the contents of the letters were immaterial, and their admission in evidence of error was harmless. (Code Civ. Proc., sec. 475; *Goldstein* v. *Nunan*, 66 Cal. 544; *Dougherty* v. *Coffin*, 69 Cal. 454; *Gassen* v. *Bower*, 72 Cal. 555; *Tivnen* v. *Monahan*, 76 Cal. 133, 134; *Silvarer* v. *Hansen*, 77 Cal. 587; *Ross* v. *Conway*, 92 Cal. 638.) The court did not err in admitting evidence of the contents of the letters written by the defendant Allenberg to his codefendant Goldstein. Under the provisions of section 1963 of the Code of Civil Procedure (subd. 24), it is a presumption that a letter duly directed and mailed was received in the regular course of mail; and a letter that is beyond the territory of the state is within the meaning of the statute "lost" so as to allow secondary proof of its contents. (*Gordon* v. *Searing*, 8 Cal. 49; *Burton* v. *Driggs*, 20 Wall. 134; *Binney* v. *Russell*, 109 Mass. 55; 1

Wharton on Evidence, sec. 130; *Manning* v. *Maroney,* 87 Ala. 567; 13 Am. St. Rep. 67; *Stevens* v. *Miles,* 142 Mass. 571.) The question whether there had been sufficient proof of loss of the originals to authorize the court to admit secondary evidence of their contents was for the trial judge to determine, and is not subject to revision. (*Elwell* v. *Mersick,* 50 Conn. 272; *Walker* v. *Curtis,* 116 Mass. 98; *Mason* v. *Libbey,* 90 N. Y. 683; *Bagley* v. *McMickle,* 9 Cal. 430.)

*Naphtaly, Freidenrich & Ackerman,* also for Respondents.

The sum of $2,400 paid Allenberg was for extra services, for which he had a right to charge, although he was a director. (Morawetz on Private Corporations, 2d ed., sec. 526.) The court did not err in admitting in evidence the letters from Goldstein to Allenberg, as they were part of the *res gestœ.* (1 Greenleaf on Evidence, sec. 108; Wharton on Evidence, sec. 1102; Code Civ. Proc., sec. 1850; *Emma Silver Min. Co.* v. *Park,* 14 Blatchf. 412; *Beaver* v. *Taylor,* 1 Wall. 642; *Lund* v. *Tynsborough,* 9 Cush. 41; *Thorndike* v. *Boston,* 1 Met. 247; *Allen* v. *Duncan,* 11 Pick. 308; *McAllister* v. *Engle,* 52 Mich. 56; *Insurance Co.* v. *Mosley,* 8 Wall. 408; *Pennsylvania Co.* v. *Weddle,* 100 Ind. 141; *Scott* v. *Middleton etc. R. R. Co.,* 86 N. Y. 208; *Riggs* v. *Lindsay,* 7 Cranch, 500; *Vacher* v. *Cocks,* 1 Moody & M. 353; *Tompkins* v. *Saltmarsh,* 14 Serg. & R. 275; *Rex* v. *Whitehead,* 1 Car. & P. 67.) The court did not err in permitting Allenberg to testify to the contents of his letters to Goldstein, as the letters were beyond the jurisdiction of the court, and therefore secondary evidence was admissible. (*Gordon* v. *Searing,* 8 Cal. 49; *Burton* v. *Driggs,* 20 Wall. 134; *Binney* v. *Russell,* 109 Mass. 55; 1 Wharton on Evidence, sec. 130; *Manning* v. *Maroney,* 87 Ala. 564; 13 Am. St. Rep. 67; *Stevens* v. *Miles,* 142 Mass. 571.) Proof of loss of letters was a question solely for the trial judge. (*Elwell* v. *Mersick,* 50 Conn. 272; *Walker* v. *Curtis,* 116 Mass. 98; *Mason* v. *Libbey,* 90 N. Y. 683; *Bagley* v. *McMickle,* 9 Cal. 430.) The contention that the judgment is unauthorized, because it grants affirmative relief to the defendants, is without merit, as the action is one in equity, and equity having jurisdiction will determine the whole controversy regardless of the prayer of the answer. (*Scott* v.

*Sierra Lumber Co.*, 67 Cal. 75; *Wilson* v. *Lassen*, 5 Cal. 114;
*Irwin* v. *Phillips*, 5 Cal. 144; 63 Am. Dec. 113; *Ord* v. *McKee*,
5 Cal. 515; *Kile* v. *Tubbs*, 23 Cal. 431; *McPherson* v. *Parker*,
30 Cal. 456; 89 Am. Dec. 129; *Wilson* v. *Castro*, 31 Cal. 420;
*Quivey* v. *Baker*, 37 Cal. 465; *Kraft* v. *De Forest*, 53 Cal. 656;
*Dorland* v. *Cunningham*, 66 Cal. 484; *Watson* v. *Sutro*, 86 Cal.
529.) Plaintiff should have been credited with his share of the
$2,400 paid to Allenberg while a director, as he was incapaci-
tated, while a director, from receiving payment for his services.
(*Pickett* v. *School District*, 25 Wis. 552; 3 Am. Rep. 105;
*Aberdeen R'y Co.* v. *Blakie*, 1 McQueen's 461; *Davis* v. *Rock
Creek etc. Co.*, 55 Cal. 364; 36 Am. Rep. 40; *Shattuck* v. *Oak-
land Smelting Co.*, 58 Cal. 550.) The court erred in admitting
in evidence the letters between the defendants Goldstein and
Allenberg, as the declarations therein were in their own favor.
(*Aguirre* v. *Alexander*, 58 Cal. 21–25; *Hausman* v. *Hausling*,
78 Cal. 283–286; *Adam* v. *Eames*, 107 Mass. 275; *North
Stonington* v. *Stonington*, 31 Conn. 412; *Craig* v. *Miller*, 103
Ill. 605; *Murray* v. *Cone*, 26 Iowa, 276; *White* v. *Green*, 5
Jones [N. C.] 47; *Gordon* v. *Clapp*, 38 Ala. 357; *Berney* v.
*State*, 69 Ala. 220; *North Berwick Co.* v. *New England etc. Ins.
Co.*, 52 Me. 336; *Douglass* v. *Mitchell*, 35 Pa. St. 445; *Sturge*
v. *Buchanan*, 10 Ad. &. E. 598.) That these letters were not
competent evidence, not even if one or more of the series had
been offered by plaintiff, has been expressly ruled in England.
(*Sturge* v. *Buchanan*, 10 Ad. & E. 598.)

The COURT. — The facts involved in this case, so far as they
need be stated, are as follows: —

On December 31, 1875, the plaintiff was indebted to the
defendant, William Goldstein, in the sum of $50,000, for bor-
rowed money, and on that day executed to him his promissory
note for the sum named, payable one day after date, with inter-
est at the rate of one per cent per month.

On March 20, 1876, plaintiff was indebted to the defendant,
Charles Allenberg, in the sum of $9,000, and on that day he
executed an agreement in writing by which he promised to pay,
on or before January 20, 1877, the said sum of $50,000 to
Goldstein, and the said sum of $9,000 to Allenberg, with

interest on the same at the rate of one per cent per month, payable quarterly. At the time of executing this agreement plaintiff also executed to Allenberg a deed of conveyance of certain real property, situate in the county of Sierra in this state, to secure payment of the said respective sums of money; and thereafter, in March, 1877, to further secure payment of the said respective sums of money, plaintiff pledged with Allenberg thirty thousand shares of the capital stock of the Altoona Quicksilver Mining Company; and on March 7, 1879, for further security, plaintiff pledged with Allenberg one thousand shares of the capital stock of the Eureka Lake and Yuba Canal Company. Immediately after receiving the said shares of stock in pledge, Allenberg surrendered the certificate therefor to the corporations and took new certificates in his own name. He was then the attorney in fact of Goldstein, who resided in Germany, and all the transactions, so far as the latter was interested in them, were managed by him as such attorney.

In March, 1877, plaintiff being then indebted to the defendant, E. L. Goldstein, upon two promissory notes for $10,000 each, given for borrowed money, one dated February 26, 1876, and the other June 29, 1876, and both bearing interest at the rate of one and one-quarter per cent per month, pledged with said E. L. Goldstein eleven thousand shares of the capital stock of the Altoona Quicksilver Mining Company to secure payment of the said notes.

On March 22, 1879, the defendants herein severally made personal demand upon the plaintiff that he pay to them the respective amounts for which he was indebted to them, and at the same time served him with written notice that unless he did make such payments they would, on the fifth day of May, 1879, at twelve o'clock noon, at the auction rooms of Middleton and Son, in San Francisco, sell the said shares of stock that had been pledged to them as aforesaid for the said respective amounts of indebtedness.

On the said fifth day of May, 1879, plaintiff commenced this action in the late district court of the fourth judicial district, in and for the city and county of San Francisco, to obtain an injunction restraining the defendants, and each of them,

from selling, or offering for sale, the said shares of stock, or any of them. In his complaint the plaintiff admitted his indebtedness to the defendants, except that he claimed the indebtedness to Allenberg to be $7,000, instead of $9,000. The injunction was granted as prayed for, and it remained in force until it was dissolved by the judgment now appealed from.

On February 25, 1880, the defendant, E. L. Goldstein, commenced an action in the superior court in and for the county of San Francisco, against the plaintiff herein, to recover the amount due upon his said promissory notes. Summons was duly served on the defendant in the action, and he failing to answer judgment by default for the sum of $34,645 was entered against him, and in favor of the plaintiff therein, on November 1, 1881.

On January 19, 1881, the defendants, Allenberg and William Goldstein, commenced an action in the superior court in and for the county of Sierra, against the plaintiff herein, to recover judgment against him for the amount of his said indebtedness to them, and to obtain a decree foreclosing as a mortgage the deed of the real property in that county, and directing the sale of the stocks which had been given and pledged to Allenberg, as before stated, to secure payment of such indebtedness. The defendant in the action, Zellerbach, filed his answer to the complaint on August 16, 1881, denying that he was at all indebted to Allenberg, and also denying that he had ever pledged with Allenberg, for the benefit of the plaintiffs in the action, or for any purpose, thirty thousand shares, or any number of shares of the capital stock of the Altoona Quicksilver Mining Company.

Thereafter the case was tried and on May 17, 1882, findings were filed and judgment entered therein. The court found that Zellerbach was indebted to Allenberg in the sum of $15,651, for principal and interest, and to William Goldstein in the sum of $75,823.15, for principal and interest; that the real property in Sierra County had been conveyed, and the said thirty thousand shares and one thousand of stock had been pledged to secure payment of the indebtedness; and that the injunction issued in this action, restraining the sale of the said stock, was

still in full force and effect. The judgment was in favor of the plaintiffs for the amounts found due them, and it directed the sale of the real property and the application of the proceeds thereof to the payment of the indebtedness, and further provided that if the proceeds should be insufficient to pay the indebtedness, "application might be made to said court for an order or writ directing the sale of said shares of stock and the application of the proceeds of said sale to the payment of such deficiency, and that until the further order of said court no process should issue therein for the sale of such stock, or any part thereof." From this judgment an appeal was taken to this court, and in February, 1884, the same was affirmed. (*Allenberg* v. *Zellerbach*, 65 Cal. 26.)

Under the judgment the real property was sold and the proceeds applied as directed. The whole indebtedness was not paid by the proceeds, but no application was subsequently made to the court for the sale of the said stocks.

The Altoona Quicksilver Mining Company was incorporated in July, 1875, with fifty thousand shares of capital stock. There were five directors of the company, and from 1878 up to 1885 defendants, E. L. Goldstein and Allenberg, were two of such directors. The last election of directors was held September 25, 1880, when the three defendants herein and two others were chosen. From that time on E. L. Goldstein was president, and Allenberg secretary and treasurer of the company. The Altoona mine was worked profitably up to 1880, but in that year it became necessary, at a large expense, to sink to lower levels, and the work therein was practically suspended, and so continued up to the trial of this action. At the time of suspending work there was quicksilver on hand, the product of the mine, which was subsequently sold by the president, E. L. Goldstein, for sums aggregating, after paying all expenses of working and indebtedness of the company, the sum of $22,730.63. This money was received by the president and held by him up to the time of the trial, no dividend of any part of it having been declared, or credit therefor given to Zellerbach.

At the times when the said stocks were transferred to Allenberg in pledge, as before stated, he was the confidential clerk

and book-keeper of Zellerbach: He was also then and there-
after the secretary of the Altoona Company, and received for
his services as such $50 per month. On October 1, 1878, a
resolution was passed by the directors of the company allowing
him $2,400 for various services rendered to the company, other
than those required of him as its secretary; and this sum was
paid to him out of the funds of the company.

On April 23, 1885, after having three times amended his
complaint in this action, plaintiff by leave of the court filed a
new "consolidated and supplemental complaint," on which the
trial was had. He alleged therein, among other things, that
since the commencement of this action he had discovered that
the moneys pretended to have been loaned to him by the defend-
ants were his own moneys, which had been embezzled by Allen-
berg, his confidential clerk, and advanced to him as money
belonging to the Goldsteins, with their knowledge and conniv-
ance; that plaintiff was not in fact indebted to the defendants,
or either of them, in any sum of money whatever; that plaintiff
was the owner of all the shares of stock claimed by defendants
to have been given to them in pledge, and that they had no inter-
est in said stocks; that the judgments of November 1, 1881, and
May 17, 1882, "are held by said defendants, E. L. Goldstein
and William Goldstein, respectively, in trust for their co-defend-
ant Allenberg; and the said Goldsteins have not, nor has either
of them, any beneficial interest whatever therein, and that all
their acts and doings in and about the receipt and procurement
of said notes, and in the suing thereon and obtaining said judg-
ments, were and are solely for the benefit of said Allenberg";
that at the time of the execution of said notes and the recovery
of judgments thereon, plaintiff believed that the consideration
of the notes had been advanced to him by the payees named,
and that the suits thereon were prosecuted and the judgments
recovered for their benefit alone; and plaintiff did not discover
that they were privy to and participating in the frauds of the said
Allenberg, or were conspiring or conniving with him in cover-
ing up and concealing his frauds upon plaintiff, until within the
three years last past; "that the defendants, conspiring and con-
federating together to ruin plaintiff in his business, and to leave
him utterly helpless and destitute financially, wrongfully took

possession of his valuable properties, and particularly the shares of stock hereinbefore mentioned . . . . and have wrongfully voted this plaintiff's said Altoona stock to elect and re-elect and keep themselves in office as directors of said quicksilver company; that said defendants have, as such directors, wrongfully voted and paid to said defendant Allenberg large and exorbitant sums of money, the property of said company, and which should have been applied to the payment of dividends on the stock of said company, . . . . and particularly that said defendants, as directors of said company, voted to said defendant Allenberg, on the first day of October, 1878, the sum of $2,400, and paid the same to him under the assumed and false pretense that it was for services rendered the company other than those of secretary"; that the defendants have wilfully managed the Altoona mine so as to depreciate its value and cause its stock to have no market value, that they might be enabled to purchase the said shares of stock, at such threatened sale, at a merely nominal price, and that unless restrained they will sell and dispose of the same, and the same will be utterly lost to the plaintiff. And the prayer was that the defendants be enjoined from selling or otherwise disposing of the said stock, or any part thereof, and be required to deliver the same to the plaintiff free and clear from all encumbrances; that the said judgments be adjudged satisfied and paid, or that the amount found due to plaintiff be set off against them; and that an accounting of all the said transactions between plaintiff and defendants be had, and for general relief.

The defendants answered the complaint, denying specifically all the allegations of fraud and conspiracy; alleged the loan of the various sums of money by themselves to the plaintiff, the pledge of the stock to secure the payment of the said sums, and the non-payment thereof; and set up and pleaded as estoppels the judgments recovered by them against the plaintiff. The answer asked for no affirmative relief.

The case was thereafter tried, and the findings upon all the issues were in favor of the defendants. A decree was accordingly entered adjudging that the plaintiff was indebted to each of the defendants, upon the judgments referred to in the complaint and answer, in certain specified sums of money, and that

the defendants respectively had a lien for the payment of such indebtedness on the said described shares of stock which were pledged to them; and also dissolving the injunction issued at the commencement of the action, and directing that the said shares of stock be sold by the sheriff at public auction in the manner and upon the notice provided by law for the sale of personal property under execution, and that the net proceeds of the sales be paid to the defendants, so far as necessary to pay the indebtedness due them.

From this judgment and an order denying his motion for a new trial plaintiff appeals.

1. The appellant contends that the judgment was not authorized: 1. Because it granted to the defendants severally affirmative relief, when no such relief was prayed for by them. 2. Because the two former judgments, upon which the relief was granted, were barred by the statute of limitations; and 3. Because the lien upon the pledged stock had become extinguished by lapse of time.

There was no error in the action of the court complained of. The case was one in equity, and the court was authorized to grant any relief consistent with the case made and embraced within the issues, although not specifically prayed for. (Code Civ. Proc., sec. 580; *Gimmy* v. *Gimmy*, 22 Cal. 633; *Scott* v. *Sierra Lumber Co.*, 67 Cal. 75; *Hurlbutt* v. *Spaulding Saw Co.*, 93 Cal. 55; Pomeroy on Remedies, secs. 83, 580.) The plaintiff himself set up the former judgments in his complaint and brought the whole matter before the court for its determination as to their validity. No question as to the judgments being barred by the statute of limitations was raised by the pleading, nor, so far as appears, at the trial. The court found: —

" At the trial of this action, evidence was introduced by the respective parties for the purpose of determining the amounts unpaid upon the several judgments hereinbefore mentioned, and the amounts of the indebtedness of the plaintiff thereon, and an investigation and accounting were had and taken of and concerning the transactions and dealings between the plaintiff and the said defendants, and of the moneys received by the defendants and each of them, for or on account of the plaintiff, and from such evidence the plaintiff has been shown to be indebted

to the defendants respectively in the respective amounts hereinbefore stated."

This finding is not assailed, and the evidence referred to is not brought up in the transcript.

It thus appears that evidence was introduced by both sides for the purpose of determining the matters referred to in the findings, and that no objection was made by either party to the evidence that was offered, or to the accounting that was had. This being so, the appellant can not raise the objection for the first time in this court that the indebtedness was barred by the statute.

"Common honesty requires a debtor to pay his just debts if he be able to do so, and the courts when called upon always enforce such payments if they can. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obligation to pay it." (*Booth* v. *Hoskins*, 75 Cal. 276.) And even though the debt is barred, the debtor cannot recover property pledged to secure its payment without first paying the debt. (*Grant* v. *Burr*, 54 Cal. 298; *Spect* v. *Spect*, 88 Cal. 437; 22 Am. St. Rep. 314; Jones' Pledges, sec. 582; 18 Am. & Eng. Encycl. of Law, p. 734.)

It follows that, as the indebtedness was not barred, the lien upon the pledged stocks had not become extinguished, and the court was authorized to order them to be sold as it did.

The appellant contends that he was entitled to a new trial, because in the accounting between the parties he should have been credited with his share of the $22,730.63 surplus assets of the Altoona Quicksilver Mining Company, and with his share of the $2,400, which as alleged was improperly paid to Allenberg.

This contention is based upon the theory that the defendants, in the exercise of ordinary care as directors of the company, ought to have declared a dividend of the surplus assets, including the $2,400, and to have credited appellant's share thereof on his indebtedness. And in support of the contention the rule is invoked that "that which ought to have been done is to be regarded as done in favor of him to whom, and against him from whom performance is due." (Civ. Code, sec. 3529.)

As to the payment of the $2,400, the court found that the

defendants as directors had not "voted to or paid the defendant Allenberg any sum of money to which he was not entitled, or which should have been applied to the payment of dividends on the stock of said company"; and the only specification of the insufficiency of the evidence to justify the findings is that it appears from the evidence that said E. L. Goldstein and Charles Allenberg, as directors of said company, voted the sum of $2,400, against the protest of Mr. Zellerbach, out of funds which should have been applied to the dividends of said corporation, and to the credit of said Zellerbach.

It appears from the statement that it was shown at the trial "that Allenberg had rendered various services other than those required of him as secretary, and had received the sum of $2,400 therefor," and that the payment of this sum was authorized by a resolution passed by the board of directors of the company. The only evidence brought up in the record to show that the allowance and payment were improper is that of Mr. Zellerbach, in which he stated "that in 1879 the trustees of the Altoona Quicksilver Mining Company voted Allenberg a compensation of $2,400 for services outside of his secretary's work, against which he, Zellerbach, protested as strongly as he could."

It was proper, if Allenberg performed extra services, that he be paid a reasonable and just compensation therefor, and that he did perform such services and received only a reasonable compensation for them must be assumed in view of the action of the board. Of course, he could not, as a member of the board, himself take part in passing the resolution to pay him the money, and it does not appear that he or even E. L. Goldstein did take any part in passing it. There were five directors, and in the absence of anything to the contrary, it will be presumed that the resolution was authorized and was properly passed.

As to the claim that the defendants ought to have declared a dividend, and should be required to account for the money in this action, as if one had actually been declared, it is enough to say that no such claim was set up in the complaint, or, so far as appears, made at the trial; but however this may be, the rule as to declaring dividends is "that the apportionments of the net earnings to the payment of cash dividends . . . . is

largely one of policy, entrusted to the discretion of the directors, which when honestly and intelligently exercised, will not be lightly overruled." (*Excelsior W. & M . Co.* v. *Pierce,* 90 Cal. 131.) Here the court found, in effect, that the defendants had honestly and intelligently managed the affairs of the Altoona Company, and had not misappropriated any of its moneys; and the evidence was amply sufficient to justify the findings.

It appeared that when work in the mine was practically suspended in 1880, there was still valuable rock in the mine, but that a considerable expenditure of money was necessary before it could be profitably worked. According to Mr. Lytle's testimony an outlay of $15,000 was necessary. He said: "It should be worked with a furnace. A good furnace could be put up for $15,000, that would word ten tons a day, with a return of about six hundred pounds of quicksilver per day." Mr. Allenberg testified "that it would require at least $50,000 to open up the mine at a lower level and equip it for good work." And the plaintiff, while giving his testimony, was asked if he complained of them for not spending the money in the further development of the mine, and said : " I didn't want them to manage anything. I wanted them to give it up. I wanted to work the mine myself. I didn't want them to do anything but give up the property."

Now, inasmuch as the plaintiff in his complaint denied that he had pledged his stock to the defendants, and was questioning their right to hold the stock in any capacity, and was attacking every act of theirs with reference to the mine, it would seem to have been simple prudence on their part to suspend any further operations, and to hold these assets in their hands until their rights should be determined and the litigation ended. For if, as claimed by plaintiff, the stock had not been pledged to them, they would have had no right to pay themselves any dividends out of the assets. Under these circumstances it must be held that the defendants, as directors of the corporation, exercised their discretion honestly and intelligently in not declaring any dividends, and that they cannot be called upon to account for the money in this action.

3. The appellant further contends that the court erred in admitting in evidence, over his objection, certain letters written

by William Goldstein to Allenberg, and also in admitting proof of the contents of certain letters written by Allenberg to Goldstein.

It appears that Allenberg was called by the plaintiff as a witness, and was asked if he had any letters from William Goldstein. He answered that he might have, and was then asked to produce them upon a succeeding day. Upon such succeeding day the witness, still being under examination by the plaintiff, was asked to produce any letters from William Goldstein which he had relating to the matters about which he had been testifying; and thereupon he produced a letter dated May 8, 1874, and was asked to read a portion thereof, which he did. The witness thereupon gave to counsel for plaintiff another letter purporting to have been written by William Goldstein under date of July 31, 1874, and plaintiff's counsel then stated: "I do not wish that letter at present. You can put in any letters you want to and exhibit them."

Subsequently, upon cross-examination of the witness, defendants' counsel offered to read in evidence the letter of July 31st, and plaintiff's counsel objected that it was incompetent for the reason that it was correspondence between two parties defendant. Defendants' counsel stated that they did not offer the letters as evidence to bind Mr. Zellerbach, but to disprove the allegations of fraud; and thereupon the letter was admitted and an exception reserved.

Defendants' counsel were afterwards permitted, over a like objection and exception, to read other letters written by the said Goldstein to Allenberg and dated respectively, November 26, 1874, May 14, 1875, July 30, 1875, November, 1875, January 28, 1876, and February 2, 1877.

The letter of May 8, 1874, which was produced and read at the request of the plaintiff, was an acknowledgment of the receipt of a letter from Allenberg containing a quarterly statement of the amount of money standing to the credit of Goldstein on April 1st, and saying it was all right. The letters objected to contained acknowledgments of the receipts of subsequent similar statements, and some of them spoke of the writer's family and financial affairs, and of his investments and losses.

It is urged that some of these letters were written after the notes were given for the money claimed to have been misappropriated, and were not a part of the *res gestæ*, and therefore not admissible; but it appears that all but two of the letters were written before the notes were given, and the last two were written before the Altoona stock was pledged to secure the notes. It also appears that the transaction complained of commenced prior to 1874, when, as alleged, Allenberg began to abstract and embezzle the plaintiff's money, and it continued until 1879, when he and his co-conspirators advertised and were about to sell the plaintiff's stock. It was, therefore, according to the plaintiff's theory a continuing transaction of robbery and fraud from the beginning to the end.

Under these circumstances any communications from one alleged conspirator to the other, made while the conspiracy was in progress, and relating to its subject-matter, were part of the *res gestæ* and admissible. The court did not err, therefore, in admitting in evidence the letters objected to. (Code Civ. Proc., sec. 1850; 1 Greenleaf on Evidence, sec. 108; *Emma Silver Min. Co.* v. *Park,* 14 Blatchf. 412; *Beaver* v. *Taylor,* 1 Wall. 642; *Lund* v. *Tyngsborough,* 9 Cush. 41; *Allen* v. *Duncan,* 11 Pick. 308.) Nor did the court err in admitting evidence of the contents of the letters written by Allenberg to Goldstein. It was shown by the witness that the letters had been mailed by him directed to William Goldstein at Bremen, in Germany, and that the witness had not seen them since; that in due course of mail he had received replies thereto, and that he had no copies of the letters.

Under the provisions of section 1963, subdivision 24 of the Code of Civil Procedure, there is a presumption that a letter duly directed and mailed was received in the regular course of the mail; and a letter that is beyond the territory of the state is, within the meaning of the statute, "lost," so as to allow secondary proof of its contents. (*Gordon* v. *Searing,* 8 Cal. 49; *Binney* v. *Russell,* 109 Mass. 55; *Manning* v. *Maroney,* 87 Ala. 567; 13 Am. St. Rep. 67; *Burton* v. *Driggs,* 20 Wall. 134.)

It is admitted by respondent that there is in the judgment a clerical error of $1,000, and that the judgment should be modified so as to correct the mistake.

The cause is remanded, with instructions to modify the judgment by striking out "$21,541.86," and inserting a lien there of "$20,541.86." As so modified, the judgment will stand affirmed. Each party will pay his own costs on appeal.

HARRISON, J., being disqualified, did not participate in the foregoing decision.