[Civ. No. 4106. Third Appellate District.—May 28, 1930.]

L. P. CUTLER, Appellant, v. F. W. KUSTER et al., Respondents.

Charles P. Johnson for Appellant.

Charles L. Chandler for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judg-·ment for the defendants in an action for damages in an assigned cause of action for breach of a contract.

The complaint contains three counts. The defendants were copartners doing business under the firm name of American Grease Company. The American Refining and Manufacturing Company was a corporation engaged in manufacturing and selling "Jazz grease" and "Jazz grease .tanks." The grease was used for lubricating differentials and transmissions of motor vehicles. The first cause of action alleges that on July 7, 1924, the parties to this action executed the written contract which is set forth in the pleading, by the terms of which the defendants were granted exclusive sales right to handle the American Jazz Grease Machine in Los Angeles County for a term of ten years; that 193 of said grease machines, together with a truck and certain accessories, were sold and delivered to the defendants for a total consideration of $6,431.15, to be paid in

specified installments; that the stipulated value of the grease machines was $30 apiece. The contract further provides that the corporation "agrees to furnish distributors [defendants] grease" of "standard quality" in drums at four cents a pound and to supply it in bulk at three and a half cents a pound; that "as an essential and indispensable part of said grease machine, a measuring device attached thereto," would be loaned to the distributor free of charge, "provided, however, that said distributor agrees not to use said measuring device for the dispensing of any grease other than that furnished by said company." Except the foregoing provision, there is no covenant contained in the contract with relation to the defendants' obligation to buy or use the vendor's "Jazz grease." The complaint further alleges that the corporation subsequently leased to the defendants 208 additional "Jazz grease machines," together with accompanying measuring devices; that pursuant to said contract the corporation sold and delivered grease to the defendants until about November 1, 1924, after which time the defendants refused to accept or purchase grease from the corporation. It was then alleged the American Refining and Manufacturing Company became bankrupt. A referee was duly appointed. May 1, 1925, upon proceedings duly had in the matter of the estate of said bankrupt corporation, the entire assets of its estate were sold to C. E. Spencer for a valuable consideration; that said order of sale contained the following provision, "the sale of all of the remaining assets of the estate, including accounts receivable, choses in action, . . . be and the same is hereby confirmed and said trustee is authorized . . . to deliver . . . on receipt of the purchase price the necessary assignments . . . "; that pursuant to said order the title to the chose in action, represented by the present action, was assigned and transferred to the said Spencer, who subsequently assigned his interest in this cause of action to the plaintiff. Finally it is alleged that after the defendants refused to accept delivery of grease from the corporation, it made a contract with the Union Oil Company to deliver to the defendants "all the grease to be used in said 'Jazz machines'" for the balance of the ten-year term covered by the first mentioned contract for a consideration which would "make a profit [for the corporation] of one dollar per month for

the oil furnished to be used in each of the grease machines'';
that the defendants refused to thereafter buy or accept
delivery of grease from the corporation to its damage in
the sum of $46,516.

The second cause of action alleged that by virtue of the
assignment mentioned in the first count, plaintiff is the
owner of nine grease machines of the aggregate value of
$369, which are deposited for storage with and wrongfully
retained by the defendants to the damage of plaintiff in
said sum of $369.

The third cause of action alleges (1) a sale and delivery
of twenty-three additional grease machines to the defend-
ants for a consideration of $30 apiece, no part of which has
been paid, (2) a sale and delivery of certain goods and mer-
chandise of the agreed value of $127.50, no part of which
has been paid, (3) the sale and delivery of certain other
merchandise of the agreed value of $24.74, no part of which
has been paid, and (4) the sale and delivery of ten addi-
tional grease machines of the agreed value of $30 each, no
part of which has been paid.

A general demurrer to the complaint was overruled.
The answer denied the material allegations of the complaint,
except that the purchase of the grease tank was admitted.
The vendor was then charged with a breach of the contract
in failing to furnish Jazz grease according to the agree-
ment. At the trial the court found that the defendants
had fully performed all the covenants of the agreement on
their part and had fully paid for all the machines, grease
and property which had been purchased from the corpora-
tion; that upon the contrary the vendor was guilty of a
breach of the contract in failing to supply defendants with
the quality of Jazz grease specified by the contract, except
for the first three months after the execution of the con-
tract, and that the defendants were, therefore, compelled
to and did purchase its grease from sources other than the
corporation; that the chose upon which this action is
founded was not duly assigned to the plaintiff; that he had
no cause of action and was not damaged in any sum what-
ever on account of a breach of contract on the part of the
defendants.

There is no controversy over the fact that the defendants
purchased some 400 Jazz grease machines from the Ameri-

can Refining and Manufacturing Company, and that for about three months after the execution of the contract Jazz grease of satisfactory quality was furnished the defendants. The evidence satisfactorily shows that all of these machines and grease were fully paid for. After a lapse of about three months the grease which was sold to the defendants proved to be inferior and unsatisfactory. The customers of defendants complained of its quality and returned many drums of grease which were subsequently returned to the corporation and credited to the account of the defendants. The corporation acknowledged the inferior quality of the grease and attempted to arrange with the Union Oil Company to supply the defendants with grease at the same price stipulated in their contract, but upon terms which enabled the American Refining Company to profit to a considerable extent. For a period of about two weeks the defendants accepted and paid the refining corporation for this Union Oil Company's grease. The substitution of Union Oil grease for the Jazz grease was not authorized by the contract. The defendants were under no obligation to accept Union Oil grease from the refining corporation. The American Refining Company had failed to perform its contract with respect to the delivery of grease. The defendants were privileged to and did thereafter purchase grease directly from the Union Oil Company. Moreover, there is substantial evidence to support the defendants' contention that the refining company had failed to pay the Union Oil Company for the grease thus purchased. Its credit with that company was therefore impaired and further delivery of grease, under such arrangements, was refused. It became necessary for the defendants to contract for their grease directly with the Union Oil Company, which they did.

The chief contention of the appellant is that, as the assignee of the refining corporation, he was entitled to the profits for the furnishing of all grease used by the defendants which would have been likely to have accrued during the remainder of the ten-year term of the contract with that company. This claim is founded upon the clause of the contract to the effect that the defendants were to use the measuring devices only for dispensing the Jazz grease furnished by the refining corporation and that on the basis of the amount which was consumed during the

first three months the prospective profits would have amounted to $46,516.

There is little merit in this appeal. For the comparative small consideration of $150 an order of sale was made of all the "remaining assets of the [bankrupt] estate, including accounts receivable, choses in action, books," etc. The particular chose in action which is here involved was not identified or described in the order of sale. There is no evidence that the referee in bankruptcy ever did assign to C. E. Spencer the actual right to maintain this action pursuant to the order authorizing it to be done. ▮ The right to recover money for the breach of a contract to purchase property may be assigned. (Sec. 954, Civ. Code.) The assignment, however, may not prejudice any legitimate defense which exists at the time of the transfer. (Sec. 368, Code Civ. Proc.) In the present case the record lacks evidence of an assignment to C. E. Spencer of the right to maintain this cause of action. ▮ The contract upon which the action is founded does not bind the defendants to buy from the corporation all the grease consumed in their business. It merely recites that the "distributor agrees not to use said measuring device for the dispensing of any grease other than that furnished by said company." There is no evidence that these measuring devices were used by the defendants in dispensing any grease which was not purchased from the corporation. ▮ Moreover, after about three months of service under the contract the corporation failed to furnish the defendants with "Jazz grease" of the standard quality required by the contract. The defendants therefore had a right to and did reject such defective grease. Mr Spencer, the sales manager of the American Refining and Manufacturing Company, testified that Jazz grease was furnished the defendants "until approximately the middle of October," and that "they were stopped because the American Grease Company objected to the quality of the grease which we were delivering at that time being not quite what they required for their work." The defendant Sharland testified in regard to this breach of contract on the part of the corporation that for two and a half or three months they were furnished grease under the contract which was entirely satisfactory; that thereafter the grease was so permeated with water and

defective in color and quality that their customers could not use it and, therefore, returned large quantities of it; that the refining corporation replaced much of this objectionable grease with grease which proved to be of no better quality; that the grease was chemically tested and analyzed and found to be defective and useless; that the corporation acknowledged the defect of quality in its Jazz grease and agreed to remedy it by a certain method of processing which would consume several days, during which time for ten days or two weeks the defendants agreed to accept delivery of grease under the contract through the Union Oil Company or the Associated Oil Company; that the refining corporation failed to remedy the defects in its Jazz grease and never thereafter delivered to the defendants any more of the Jazz grease. Sharland testified: "I finally found out the Associated Oil Company had refused to deliver any further grease to the American Refining & Manufacturing Company, due to the fact they had not paid their bill . . . I refused to accept that quality of grease. He could not get it from the Associated and so the thing was dropped. . . . Their [the Refining Company's] factory was being closed then, that was the middle of December, and I didn't see him [Spencer] again until the latter part of January. . . . [Later] He said he had made satisfactory arrangements with an oil company to furnish grease as per samples which he presented to me. I examined the samples and told him it was the same grease that he had once before offered me and I didn't care to buy any of it, I could not use it. Q. Was that the same quality . . . as 'Jazz' grease? A. No, it was an entirely different grease." This witness also testified that the American Refining Company never thereafter furnished any grease to the defendants; that the corporation became bankrupt, closed its place of business and that the defendants fully paid for all the grease machines, grease and property which were purchased from the refining corporation.

We are of the opinion that the findings of the court and the judgment are in every respect amply supported by the evidence and that the plaintiff is not entitled to recover in this action, for the reasons that an actual assignment of the chose to C. E. Spencer is not shown; that the defendants were not guilty of a breach of their contract; that the

measure of alleged damages for failure to accept delivery of grease from the corporation is too uncertain and speculative and because the property which was purchased from the corporation was fully paid for.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.