[Civ. No. 15077. Second Dist., Div. Two. Feb. 19, 1946.]

JUANITA E. O'MELIA, Respondent, v. GERALD S. ADKINS, as Executor etc., Appellant.

144

Roy P. Dolley and Wm. W. Kaye for Appellant.

Joseph Scott, J. Howard Ziemann, A. H. Risse and Cuthbert J. Scott for Respondent.

MOORE, P. J.—By appropriate pleading plaintiff sued to impress a trust upon the estate of decedent O'Donnell for the amount of the proceeds he had received from the sale of

a property alleged to have been held in trust by decedent and for the revenues and profits derived from the same property. After trial the court ordered plaintiff to file an amended pleading to conform to the proof and awarded judgment as prayed. Defendant appeals on the grounds (1) that a cause of action was neither alleged nor proved; (2) that the alleged cause of action was barred by laches and by the statutes of limitation.

### FACTS ESTABLISHED.

Plaintiff was married to James E. O'Donnell at Santa Ana on February 6, 1922. She lived with him for about six years, after which they lived on friendly relations until August 29, 1936, when respondent obtained a divorce at Reno, Nevada. Seven months prior to that decree they entered into a property settlement whereby respondent acquired title to an apartment house situate in the city of Seattle, hereinafter referred to as the apartment. Thirty-eight days after her divorce respondent was married to Pat O'Melia, with whom she has since lived on terms of cordiality. In December of 1936, at the request of decedent, respondent conveyed to him by grant deed the apartment and at the same time they executed a written supplemental agreement in which it was declared that the apartment had been mistakenly included in the original property settlement agreement and that respondent "desires to amend" that instrument "to evidence the correction of such error." She did not read the document. Neither did she have advice of counsel nor receive a consideration. April 13, 1938, decedent made sale of the apartment for $22,500 after having collected certain rentals therefrom. He departed this life in February, 1944, without having accounted to respondent. The court decreed a lien upon the entire estate of decedent in the sum of $21,162.16, the net sum of all moneys received by decedent on account of the apartment, less expense of sale.

The attack upon the pleading as well as upon the findings and evidence is based upon the fact that respondent pleaded, and was permitted to testify, that contemporaneously with the execution of the grant deed and the supplemental agreement decedent stated to her that it was necessary for him to have the title to the apartment in his name and that if she would convey it to him he would reconvey it or its equivalent to her upon her request; that she demanded a return on three different occasions prior to its sale by decedent but that he

had refused to make such reconveyance or to pay its equivalent; that in reply to her requests for such reconveyance or payment decedent reassured her with such statements as the following: "I am no Indian giver; everything is o. k.; you have nothing to worry about; I will see that you are taken care of; I have always taken care of you and always will; I intend to reconvey the property or its equivalent to you." At no time did he state that he would not return the apartment or pay its equivalent, and respondent at all times believed in and relied upon decedent's promises.

The court found that the apartment was not included in the original property settlement by inadvertence or mistake and that its inclusion therein was not contrary to their agreement at the time but that both parties intended that the apartment should become the property of respondent; that the moneys received by decedent on account of the apartment constitute a part of decedent's estate; that at the time of executing the supplemental agreement respondent was ignorant of its contents and that her signature was obtained thereto by fraud and deceit. The court determined also that the action was barred neither by laches nor by any statute of limitation and that appellant has not been prejudiced by respondent's failure to file an action prior to the decease of Mr. O'Donnell, but that "in the middle of 1938" respondent learned that decedent had sold the apartment. She testified that she neither informed him of her new knowledge nor instituted an action to recover the equivalent because of his repeated reassurances of good faith.

AMENDED PLEADING SUPPLANTS THE ORIGINAL COMPLAINT.

■ A generous portion of appellant's briefs is devoted to arguments for the purpose of demonstrating variances between the original complaint and the complaint as amended to conform to the proof. Those arguments are vain. Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court. (*Dieckmann* v. *Merkh,* 20 Cal.App. 655, 658 [130 P. 27]; *Bonney* v. *Petty,* 125 Cal. App. 527, 529 [13 P.2d 969].) Other arguments of appellant criticize the findings and decision for including matters not specifically mentioned in the amended complaint. ■ While it would have been better practice to present in the amended complaint all pertinent issues, yet no prejudice resulted from the finding of a fact which was embraced in the general issue, although not specifically set forth in the

pleading. ■ When an original pleading presents a state of facts appealing to a court of equity and the latter takes jurisdiction thereof, it will endeavor to do complete justice and award whatever relief the evidence justifies, if within the issues, even though not specifically prayed for. (*Zellerbach* v. *Allenberg*, 99 Cal. 57, 68 [33 P. 786]; *Hurlbutt* v. *N. W. Spaulding Saw Co.*, 93 Cal. 55, 57 [288 P. 795].)

## PARAMOUNTCY OF WRITTEN CONTRACT.

Despite the clear and explicit language of the grant deed and supplemental agreement and over appellant's objections the court permitted respondent to testify concerning (1) her separation and property settlement in January, 1936; (2) her conversations with decedent at that time in which he said that he wanted her to have the Seattle apartment; (3) her conversations with him in December, 1936, prior to her conveyance, in which he requested her "to lend it back to him" and she told him that she thought she should not, that it was hers and she should keep it; (4) his oral promise that he would "return the apartment house or the equivalent" at her request.

■ It is a rule of substantive law that in the absence of an extrinsic ambiguity or of a pleading of invalidity, illegality, fraud, accident or mistake (Code Civ. Proc., § 1856), a written contract cannot be defeated, invalidated or modified by testimony of a contemporaneous, parol, contradictory agreement. (*Estate of Gaines*, 15 Cal.2d 255, 264 [100 P.2d 1055]; *McArthur* v. *Johnson*, 216 Cal. 580, 582 [15 P.2d 151]; *Pacific States Securities Co.* v. *Steiner*, 192 Cal. 376 [220 P. 304]; *Harding* v. *Robinson*, 175 Cal. 534, 540 [166 P. 808]; *Hanrahan-Wilcox Corp.* v. *Jenison M. Co.*, 23 Cal.App.2d 642, 645 [73 P.2d 1241].) A written contract supersedes all negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. (Civ. Code, § 1625.) It is deemed to contain all terms agreed upon. If its language is clear and explicit and does not involve an absurdity (Civ. Code, § 1638), and no issue of mistake, imperfection or validity of the agreement is in dispute, no evidence thereof other than its own contents is admissible. (Code Civ. Proc., § 1856.) It is a conclusive presumption that, with the exception of the specified consideration, the facts recited in a written instrument are true in any controversy between the parties thereto or their successors in interest. (Code Civ. Proc., § 1962, subd. 2.)

The authorities cited by respondent in support of her contention that a valid trust was created (*Kobida* v. *Hinkelmann,* 53 Cal.App.2d 186 [127 P.2d 657] ; *Airola* v. *Gorham,* 56 Cal.App.2d 42, 46 [133 P.2d 78]) are not in point. The Kobida action was one to enforce an ''express oral trust involving personal property.'' The Airola case involved a ''voluntary constructive trust'' arising by virtue of the fraud of two sons who induced their mother to convey her interest in lands to them to be held ''in trust for her and to be reconveyed as soon as pending business transactions involving said property . . . were completed.'' In violation of the confidence the mother had reposed in her sons, one son executed a deed conveying the lands to his wife and placed it in escrow, to be delivered upon his decease.

## THERE WAS NO FRAUD.

 It is contended by respondent that decedent's repudiation of his promise to hold the apartment or its equivalent in trust for her constituted a constructive fraud. So to hold would make every breach of contract a fraud. The mere failure of a grantee to perform his oral promise does not create a constructive trust unless he was guilty of fraud in procuring the grant. (*All* v. *Prillaman,* 200 S.C. 279 [20 S.E.2d 741] ; 159 A.L.R. 981.) In order for a promise to be fraudulent it must be made in bad faith, without any intention of performing it. It is held that even though a husband by deed conveys lands to his wife as an inducement for a reconciliation he cannot in the absence of an allegation of fraud recover the property because of her failure to fulfill her agreement to live with him. (*Bragg* v. *Bragg,* 219 Cal. 715, 721 [28 P.2d 1046].) He cannot avoid the ''legal consequences'' of his solemn writing by parol evidence contradictory thereof. (*Miller* v. *Brode,* 186 Cal. 409, 412 [199 P. 531].) In the recent case of *Ampuero* v. *Luce,* 68 Cal.App.2d 811 [157 P.2d 899], the contention was made that at the time of the deed to her defendant had made a promise to provide Mr. Ampuero with medical care and that her repudiation of that promise operated as a constructive fraud. But the court held that in the absence of confidential relations a promise is fraudulent only when it is made without intention of performance. Moreover, evidence of facts constituting a constructive trust must be something more than that modicum of evidence ordinarily

deemed sufficient to support a finding "where the matter is not so serious as the overthrow of a clearly expressed deed, solemnly executed and delivered." It must be explicit, unequivocal and indisputable. (*Wehle* v. *Price,* 202 Cal. 394, 397 [260 P. 878].) Especially is this true when the only person who could successfully have contradicted the uncorroborated testimony is dead. (*Olson* v. *Olson,* 4 Cal.2d 434 [49 P.2d 825].)

 The grant deed and the supplemental agreement are both free from ambiguity. It is not pleaded or suggested that they are void by reason of a statute or that in any respect they violate public policy. In definite and distinct language the agreement sets forth its purpose, recites a valuable consideration and "other valuable considerations" and respondent agrees to convey the apartment to decedent. It was neither pleaded nor proved that the promise of decedent was made without intention of performance but on the contrary continuously thereafter respondent relied upon it and took no action to enforce it until decedent lay in "the tongueless silence of the dreamless dust." It follows that the testimony of respondent was erroneously received and that appellant suffered material prejudice thereby.

### No Confidential Relationship.

 But respondent earnestly contends that the evidence established a confidential relationship between the decedent and respondent. It is true their relations had been close for 14 years, during six of which they were husband and wife, and respondent testified that at the time of entering into the supplemental agreement she believed and relied upon O'Donnell's promise. But her marriage to O'Melia made a change in her status. That event had occurred less than three months before her negotiations with decedent for her conveyance of the apartment. During the period of her conversations with decedent prior to executing the two documents she frequently consulted her new husband as to the advisability of acceding to decedent's request. He never advised otherwise than against decedent's wishes and she concurred in his judgment. Moreover, the very fact of their divorce restored her to the status of an unmarried person (Civ. Code, §§ 91, 132) and she was thereby completely discharged from the obligations of fidelity and fealty of a wife. (*Barber* v. *Barber,* 16 Cal. 378; *Bacon* v. *Soule,* 19

Cal.App. 428, 433 [126 P. 384]; *Ampuero* v. *Luce,* 68 Cal. App.2d 811, 816 [157 P.2d 899].) Bearing no allegiance to decedent but owing her moral and material support as well as her loyalty to her husband, it cannot be said upon the basis of authority or philosophy that a relation of confidence existed between them. A confidential relationship will not be presumed from her sentimental friendship for her former mate, nor from her confidence in his earning power, nor from her belief in his promises. Their estrangement "for eight years" and their subsequent divorce upon her application swept away all private and secret relations. He was no longer her trusted and intimate partner. The fact that he had put her away as he had done with two former spouses necessarily created a gulf between them which could not have been bridged by his request of her by formal writing to place in his hands a valuable property without more security for its return than his oral promise. Neither was such confidential relationship proved by the testimony of respondent that he had asked her to obtain a divorce; that in the eight years of their estrangement she accompanied him only three or four times on social occasions; that after her marriage to Mr. O'Melia decedent was always friendly with her; that he regarded her like a daughter; that he said he was in sore need of the apartment, without stating a reason; that at the time of signing the supplemental agreement she knew the property would be returned to her; that she did not read the document before signing it; that he always "virtually" said he would leave her something in his will "so that the equivalent would be that of the Seattle property"; that he did not say he would leave her something in his will "but I just assumed he would"; that when she signed the documents she left them on his desk; that after learning of the sale of the apartment she never asked decedent about the sale; that she relied on him at all times until he died. There is positively nothing in her testimony to indicate a confidential relationship other than her self-serving declarations that she executed the agreement without reading its contents and relied upon decedent's promises. However, granting that in contracting with decedent she was moved by the alleged confidential relationship, it does not necessarily follow that respondent may disprove the written agreement by parol.

### The Action Is Barred.

■ But even though a confidential relationship had obtained at the time of the contract, can it be conceived that such confidence persisted through the year 1937 when respondent made repeated demand for the return of the apartment, through 1938 when she learned that decedent had sold the property, to be followed by demands for the fulfillment of his promise, and through 1939 when her request was repeated in February? Did it continue through the succeeding four years and nine months to the end of Mr. O'Donnell's life—a period within which she never even suggested to him that he pay her the equivalent of the apartment? If such attitude of indulging one so generous with promise and so niggardly in performance may be the concomitant of a confidential relationship, should equity indulge its jurisdiction to restore to a complainant what she has so eagerly entrusted to one to whom she owed no obligation save respect? For respondent to have delayed the enforcement of her demands in 1937, 1938, 1939, 1940, 1941, and 1942, can be ascribed to nothing but her own neglect. That she further delayed after her demand in 1943 spells nothing but laches. She knew or must have suspected that decedent's financial condition was not as sound as in other days. She knew that by virtue of the certainty of death he would at no distant day "shuffle off this mortal coil," and that when such event of nature should occur he would not be present to extend to her the keys to his estate in satisfaction of his oral promises. No good reason appears, no excuse is offered, for her failure to institute legal action for over six years and until his death. Such a delay under the circumstances is a distinct badge of laches. (*Archer* v. *Freeman,* 124 Cal. 528, 532 [57 P. 474].) At a trial she could tell of oral promises; he would not be present to deny or explain. And, as if in recognition of her folly, when decedent had passed she did not file a claim against his estate for moneys he owed her, as the law provides. (Prob. Code, § 716.) It follows that in view of her unreasonable delay, combined with the prejudice to the estate, her laches bars her right of recovery.

■ Finally, appellant invokes the statutes of limitation. From this plea no escape appears reasonable. Section 338, subdivision 4, Code of Civil Procedure, bars an action for relief from fraud or mistake three years after its discovery

by plaintiff. Section 339, subdivision 1, bars recovery upon a contract not founded upon an instrument in writing. By virtue of her several demands upon decedent a cause of action arose in 1937, 1938, or in 1939. If she relied upon her claim of fraud she was required to file within three years. In 1938 decedent not only refused to reconvey the apartment but also he sold it and deposited all of the proceeds in his own bank account. Surely her action based on fraud was barred in 1941. If she relied upon the oral promise to reconvey, her suit was barred in two years. In any event, she could maintain no action filed after 1942. If a demand is necessary to perfect a right of action the claimant "cannot indefinitely and unnecessarily extend the bar of the statute by deferring such demand . . . but must make it within a reasonable time." (*Bogart* v. *George K. Porter Co.,* 193 Cal. 197, 209 [223 P. 959, 31 A.L.R. 1045].) Neither may one extend the period defined by the statute by making repeated demands.

It is alleged that decedent "wilfully, knowingly and fraudulently appropriated all of said money which he received from the sale of said property to his own use and benefit." In view of such claim neither demand nor repudiation was necessary to start the statute's running. She learned of the sale in 1938 and her right of action, if any, arose at that time. Where the defendant is alleged to hold property under a constructive trust the statute begins to run promptly upon his doing the acts which created the trust. (*Lezinsky* v. *Mason Malt Whiskey D. Co.,* 185 Cal. 240, 244 [196 P. 884].) Having failed to sue within three years after such discovery respondent may not maintain this action commenced six years thereafter.

The judgment is reversed with instructions to the court below to enter a dismissal.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied March 7, 1946, and respondent's petition for a hearing by the Supreme Court was denied April 18, 1946. Gibson, C. J., and Carter, J., voted for a hearing.