[Civ. No. 2121.  Third Appellate District.—June 7, 1920.]

POTTER-HUFFMAN LAND & LIVESTOCK CO. (a Corporation), Respondent, v. W. V. WITCHER, Appellant.

[1] PLEADING—PRAYER—RELIEF AUTHORIZED.—While in default cases the prayer of plaintiff's complaint limits his recovery, in contested cases such demand does not limit the recovery, but the court may grant plaintiff any relief consistent with the case made by the complaint and embraced within the issue, although not specifically prayed for.

[2] WATERS AND WATER RIGHTS — ACTION TO QUIET TITLE — ISSUES — PRAYER—JUDGMENT.—In an action to quiet the title of plaintiff as against defendant to a certain reservoir and right of way, if the allegations of the complaint and the denials and averments of the answer clearly raise an issue as to the ownership of certain specific water rights, it is necessary for the trial court to find the facts in reference to such rights and to adjudicate as to the

ownership of the same, notwithstanding plaintiff did not pray for such relief.

[3] ID.—FINDINGS OF OWNERSHIP AND NOTICE—EVIDENCE.—In this action, the evidence was sufficient to sustain the findings of the trial court that plaintiff was the owner of a certain reservoir and reservoir site described in plaintiff's complaint, and that defendant had full knowledge and notice of the rights of the corporation, plaintiff's predecessor, to such reservoir and reservoir site at the time he accepted from the general manager of said corporation the instrument which by such general manager conveyed to defendant all his title and interest in said reservoir and reservoir site.

[4] NOTICE — PLACING OF PERSON ON INQUIRY.—Where a person had sufficient information to place him on inquiry, he is chargeable with notice of all facts which he might have ascertained by inquiry.

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jamison & Wylie for Appellant.

Chas. W. Kitts and Daly B. Robnett for Respondent.

NICOL, P. J., *pro tem.*—This is an appeal from a judgment of the superior court of Modoc County adjudging plaintiff to be the owner of a certain water right, reservoir site, and right of way described in the complaint, and also adjudging that a certain instrument in writing, executed by one Ed Ivory, Jr., to defendant and set out in the complaint, conveyed no right, title, or interest in said water right, reservoir site, and right of way.

The complaint alleges that the plaintiff is the owner and in possession of a certain tract of land described in the complaint as the "E" or Ivory Ranch, in Clover Swale, Modoc County, together with the right to construct and maintain a reservoir on sections 2 and 11, T. 43 N., R. 10 E., M. D. M., and a right of way therefrom down what is known as Weller Canyon to the said "E" Ranch. That this reservoir site and the right of way were located, appropriated, and secured for the purpose of impounding winter water draining from Antelope plains and delivering the same to and upon said "E" Ranch, during the irrigating

season to be there used for irrigating the crops thereon, and that at all times since the selection thereof they have been appurtenant to the ·said ''E'' ranch.

The said ranch for many years prior to October 8, 1915, was owned by the Ed Ivory Land & Livestock Company (a corporation) and its predecessors in interest, and the plaintiff through certain mesne conveyances has succeeded to its title thereto, together with all water and reservoir rights, etc., connected therewith.

The complaint further alleges that for more than twenty years continuously, next preceding the year 1912, the said corporation had claimed, appropriated, taken, and used all the natural flow of water from sections 2 and 11 and surrounding lands known as Antelope ·plains, draining off through Weller Canyon during the irrigating season of each year, to wit, from June 1st to October 15th, for irrigating said ''E'' Ranch.

This allegation of the complaint was specifically denied by the defendant, and in addition thereto the defendant avers the facts to be that the defendant is the owner of 160 acres of land that is riparian to the waters flowing from said Antelope plains, through said Weller Canyon, and that for a period of fifty years prior to the commencement of this action the defendant and his grantors have irrigated the tillable portions of said lands from the waters flowing through said Weller Canyon during the irrigating season of each and every year.

Upon the issue thus formed the court found: That for more than twenty years continuously next preceding 1912, the Ed Ivory Land & Livestock Company and its predecessors in interest had claimed, appropriated, taken, and used all the natural flow of water from sections 2 and 11, T. 43 N., R. 10 E., M. D. M., and surrounding lands known as Antelope plains draining through said canyon during the irrigating season for irrigating said ranch and ever since and including the year 1912 plaintiff and its predecessors have so taken and used all of the natural flow of said water, and for a period of more than twenty-eight years preceding the commencement of this action the said waters, and the whole thereof, were and are necessary and indispensable to the proper irrigation of said lands.

The court further found: "That the defendant is the owner of 160 acres of land known as the Redding Field, which adjoins the said 'E' Ranch on the south, through which the watercourse flowing through the said 'E' Ranch continues and through which watercourse and over said land the drainage from said 'E' Ranch passes. That for a long period, namely, forty years prior to the commencement of this action, the water which drained upon said premises from said 'E' Ranch had been used from time to time as desired in irrigating said lands. That at no time were the possessors and occupants of the 'E' Ranch ever asked to or compelled or did they, during the irrigating season, allow any portion of the water of said Weller Canyon which could be used in irrigating on said 'E' Ranch, pass the boundaries thereof to said defendant's land. That the only water from said Weller Canyon ever used on said Redding Field was such as was voluntarily permitted by the owners and occupants of said 'E' Ranch to flow on to said defendant's premises."

The appellant claims that the court erred in finding and decreeing that the plaintiff is the owner of all the natural flow of the water of Weller Canyon. That this is an action to quiet the title of plaintiff as against defendant to the. reservoir and the right of way described in the complaint. That there was no prayer in the complaint that the court should decree anything else to the plaintiff than the said reservoir and right of way, and that the said findings are not supported by the evidence.

[1] It is true that the prayer of the complaint in this action does not specifically ask for judgment as to the ownership of the water right, but it was not necessary that it should, in order to warrant the court in granting the relief that it did in that respect. Section 580 of the Code of Civil Procedure provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue." In default cases the demand limits plaintiff's recovery (*Staacke* v. *Bell,* 125 Cal. 309, [57 Pac. 1012]; *Brooks* v. *Forington,* 117 Cal. 219, [48 Pac. 1073]), but in contested cases the demand does not so limit the recov-

ery, and the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue, although not specifically prayed for. (*Dennison* v. *Chapman,* 105 Cal. 447, [39 Pac. 61]; *Zellerbach* v. *Allenberg,* 99 Cal. 57, [33 Pac. 786]; *Hurlbutt* v. *N. W. Spaulding Saw Co.,* 93 Cal. 55, [28 Pac. 795]; *Cassinella* v. *Allen,* 168 Cal. 677, [144 Pac. 746]; *Murphy* v. *Stelling,* 8 Cal. App. 702, [97 Pac. 672]; *Fox* v. *Hall,* 164 Cal. 287, [128 Pac. 749]; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, [111 Pac. 360]; *Fulkner* v. *First Nat. Bank,* 130 Cal. 258, [62 Pac. 463]; *Poledori* v. *Newman,* 116 Cal. 375, [48 Pac. 325].) It was said by this court in *Haight* v. *Stewart,* 36 Cal. App. 514, [172 Pac. 769], that: "It is well settled in procedural law that a party is not only entitled to any and all relief which is appropriately within the scope of his pleading, but may be awarded such relief upon any substantial legal or equitable ground coming within the fair and reasonable import of the averments of his pleading."

[2]  The allegations of the complaint and the denials and averments of the answer as above stated clearly raised an issue as to the ownership of the water rights in Weller Canyon, and it became necessary for the court to find the facts in reference to such rights and to adjudicate as to the ownership of the same.

[3]  We are of the opinion that the evidence is ample and sufficient to sustain these findings of the trial court as to the ownership of the said water rights. It appears that the Ivory family settled on the "E" Ranch in 1872, being forty-six years before the trial of this action. In 1904 they organized the Ed Ivory Land & Livestock Company. All the officers and shareholders of the company were members of the said family. Ed Ivory, Jr., became the general manager of the company at the time of its organization and continued as such until it was dissolved, and during this time he generally attended to its business. From the date of the articles of incorporation to October 8, 1915, the said company occupied and claimed said ranch. As to the use of the water on the "E" Ranch, Ed Ivory, Jr., testified as follows: "Q. During this period was part of it irrigated? A. Yes, sir. Q. How long prior to 1904 had the lands there been irrigated? A. They had been irrigated

48 Cal. App.—7

as long as we owned it. Q. How long had your folks owned it? A. I do not know. Q. Were you born there? A. Yes, sir. Q. They were irrigated as long as you can remember? A. Yes, sir. Q. And always have been irrigated since you can remember? A. Yes, sir. Q. Where did they get the water to irrigate those lands with? A. There were springs in the canyon and in the spring of the year we got the overflow of Antelope plains. Q. Did you use the water that came down out of the canyon? A. Yes, sir. Q. Did you use it all? A. Yes, sir; we used it all, it ran over the ground. Q. How did you use that water, was it by permission of anybody or did you rent it from somebody? A. No, sir; we just used it. Q. Did you claim it as your own? A. I do not know as we claimed it could not get away from there. Q. You just took it and used it? A. Yes, sir. Q. For forty years or more the Ivory family has used that water? A. Yes, sir. Q. And nobody else claimed it or used it, did they? A. No, sir. Q. You took it all, except in the winter season, did you not? A. Yes, sir. Q. Where did this water that came from the canyon come from? A. It comes off of the Antelope Plains and the country surrounding that. Q. That canyon is Weller Canyon, is it not? A. Yes, sir. Q. Weller Canyon is the outlet of Antelope plains where it runs out to the river, is that right? A. Yes, sir." He further stated that the water of Weller Canyon was a good stream in the early part of the season, but goes down later and ceases to run in July or August. Mrs. Mary E. Ivory testified that she had resided on the "E" Ranch for forty-six years. That during that time the waters of Weller Canyon were used for irrigating said ranch and that no one ever interfered with them in the use of said water nor made any claim thereto until the defendant started trouble. That they claimed the water during all that time for the irrigation of the "E" Ranch. That they used the water for the irrigation of crops raised there, which crops consisted of hay, grain, and a garden. Thomas H. Ivory testified that the waters of Weller Canyon that drain from Antelope plains were necessary for the lands of the "E" Ranch. That he had irrigated the property a good many years and found that the water would dry up too early to even make a thorough crop.

It appears from the foregoing evidence that the natural flow of the waters of Weller Canyon was used by the Ivory family in irrigating the "E" Ranch, during the irrigating season, for a period of over forty years, and that during this time nobody else made any claim to the said waters or interfered with them in their use of the same. This evidence as above stated, in our opinion, fully sustains the said findings of the trial court.

As to the reservoir site and right of way described in the complaint, it appears from the record that in the year 1913 Ed Ivory, Jr., made application to the United States land department for the location of said reservoir site and right of way therefrom down Weller Canyon to the "E" Ranch, which application was approved by the United States commissioner on May 25, 1914. Prior to this, on October 15, 1912, the said Ed Ivory, Jr., had appropriated for this reservoir one thousand miner's inches of water measured under a four-inch pressure, flowing in Weller Canyon during the period of melting snow. Said water to be restrained by means of a dam, at the point at which this notice of appropriation was posted. On December 27, 1915, the said Ed Ivory, Jr., by an instrument in writing, set out in the complaint, conveyed all his title and interest in said reservoir and reservoir site to the defendant, for the stated consideration of $250, and on August 7, 1916, he filed with the United States land office his relinquishment of said reservoir. On the same day Mary E. Ivory, his mother, filed with the department an application "for a reservoir and canal identical with that theretofore granted to Ed Ivory, Jr." The land department refused to approve either of the applications, for the reason that prior to August 7, 1916, said Ed Ivory, Jr., had conveyed said reservoir to the defendant.

On this feature of the case two questions are presented: (1) Did Ed Ivory, Jr., act as trustee or agent for the Ed Ivory Land & Livestock Company, in locating and securing the right to the reservoir site and right of way therefrom, described in the complaint, and (2) Did the defendant take the agreement of December 27, 1915, from Ed Ivory, Jr., with notice that the said reservoir and right of way had been located for the use and benefit of the Ed Ivory Land & Livestock Company?

1. The court found that the plaintiff was the owner of the "E" Ranch, together with the right to construct and maintain a reservoir and the right of way therefrom down Weller Canyon to the said ranch. That the reservoir site, water right, and right of way described in the complaint were located, appropriated, selected, and secured for the purpose of impounding the winter water draining from Antelope plains and delivering the same upon the said "E" Ranch during the irrigating season, to be used thereon for irrigating the crops thereof, and at all times since the selection thereof have been appurtenant to the said ranch. That Ed Ivory, Jr., located the said reservoir site, water right, and right of way as the manager of the said Ed Ivory Land & Livestock Company, and that the costs, charges, and expenses of making said location, survey, and application were paid out of the funds of the said company. That he continued as a director and general manager of the said company until October 8, 1915, though he performed no duties as manager after April, 1913.

The foregoing finding is fully supported by the evidence. Ed Ivory, Jr., testified that he made the said water appropriation on October 15, 1912, to secure the water for irrigating the "E" Ranch. That he located in his own name for the Ed Ivory Land & Livestock Company and in the performance of all acts he was acting for the said company as its general manager. That he made the application for the reservoir site and had a survey made for the benefit of the company and all the costs and expenses of the same were paid out of the funds of the said company. That when he filed on the same he intended it for the said ranch. It is true that he did testify that the expenses were charged up against his salary. How they were so charged he does not state. The court, however, upon sufficient evidence, found that he did not pay any portion of said costs and expenses.

2. As to the defendant having notice at the time he took the agreement of December 27, 1915, the court found: "That at the time of making and delivery of the instrument of December 27, 1915, and at the time of the payment of the consideration specified therein, the defendant knew that the said Ed Ivory, Jr., had made such location, survey, and application and had secured the right from the

United States to said water, water right, dam, reservoir site, and right of way, and then held the same as the general manager of, to, and for the use and benefit of the Ed Ivory Land & Livestock Co., and that the company had paid all the expenses incurred in securing the same, and that Ed Ivory, Jr., had no right, title, or interest of his own therein.''

The defendant was a neighbor and for over thirty years had an intimate acquaintance with the Ivory family and the ''E'' Ranch. He was a witness at the trial of this action and while on the witness-stand he made the following admission: ''Q. Did you have any knowledge or notice at the time you contracted for this reservoir from Ed Ivory, Jr., that the Ed Ivory Land & Livestock Company had any rights in this reservoir? A. Well, I was told by Mr. Ivory that he had filed on it first for the Land & Livestock Co., but his father objected to his taking it for the company and he then took it for himself individually.'' Ed Ivory, Jr., stated as a witness that two years before the making of said agreement he told the defendant about this reservoir and what a good thing it would be. That they went down to the reservoir site together, and he told the defendant that there was more water than the Ed Ivory Land & Livestock Co. needed for their ranches and he told him that he had located for the ''E'' Ranch. The said witness further stated that he knew of some work being done there by the defendant during 1915, and prior to the conveyance of December 27, 1915. ''I talked to Mr. Witcher about it and we were going to construct the dam, he was going to furnish the money and I was to be superintendent of the work and the water was to be divided between him and the Ed Ivory Land & Livestock Co.'' Work was commenced but was suspended by the defendant upon Mrs. Mary E. Ivory threatening to commence an injunction suit. The defendant admitted that in 1915, before he purchased, that he had two interviews with Ed Ivory, Sr., and Mrs. Mary E. Ivory about this reservoir. That in one of these interviews he offered to construct the reservoir and they could take their own time to pay for their proportion of the cost at six per cent interest, and they were to have a half interest in the reservoir.

There is other and additional evidence in the record bearing upon this question, but it is unnecessary to review the same, as we are of the opinion that the foregoing is ample and sufficient to sustain the finding of the court as to the defendant having full notice and knowledge as to the rights of the Ed Ivory Land & Livestock Company in and to said reservoir at the time he received the instrument of December 27, 1915.

[4] The defendant was not an innocent purchaser without notice; he was given sufficient information to place him on inquiry long before the transfer of December 27, 1915, and was, therefore, chargeable with notice of all facts which he might have ascertained by inquiry. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Sec. 19, Civ. Code.) A party having readily accessible means of acquiring knowledge of a fact, which he might have ascertained by inquiry, is equivalent to notice and knowledge of it. (*Montgomery* v. *Keppel,* 75 Cal. 128, [7 Am. St. Rep. 125, 19 Pac. 178].) The law imputes knowledge of facts to one who has sufficient means of knowledge to put him upon inquiry. (*San Diego etc. Co.* v. *La Presa School District,* 122 Cal. 98, [54 Pac. 528].)

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.