[Civ. No. 3446.   First Appellate District, Division Two.—February 11, 1921.]

E. B. KIMBALL, Respondent, v. LYDA N. SWENSON et al., Appellants.

[1] CONVERSION—CROP OWNED BY PARTNERSHIP—TRANSFER FOR CREDITORS—PREVIOUS SALE OF PART OF CROP—RIGHTS OF PURCHASER.— Where a member of a partnership engaged in raising a crop of corn entered into a written agreement while the corn was planted, but not yet harvested, to sell to the plaintiff a part of the crop, and the agreement was made with the knowledge and consent of the other partners, and full payment for the corn was made to the selling partner, and thereafter the entire crop was delivered to a third party to be sold for the benefit of creditors of the partnership, the sale by such third party after demand by the purchaser for his portion of the crop was a conversion, since the third party was the agent of the partnership and charged with the knowledge of the principal as to such sale.

[2] ID.—MEASURE OF DAMAGES—EXCESS OF PRAYER OF COMPLAINT.— In an action for conversion, where the answer joined issue on the amount of damages and the case was tried upon the theory that the measure fixed by the code was applicable, it was not error, in view of section 580 of the Code of Civil Procedure, to render judgment for the highest market value of the converted property between the conversion and the verdict, although such amount exceeded the amount demanded in the prayer of the complaint.

APPEAL from a judgment of the Superior Court of Contra Costa County.  A. B. McKenzie, Judge.  Affirmed.

The facts are stated in the opinion of the court.

1.  Notice to principal as notice to agent, note, 24 **Am. St. Rep.** 228.

Peck, Bunker & Cole and C. D. Dethlefsen for Appellants.

Gillogley, Crofton & Payne for Respondent.

NOURSE, J.—This is an appeal from judgment after verdict in favor of plaintiff for $1,677.50 as damages for the conversion of twenty-five tons of corn. The facts material to the opinion are that for some time prior to May 23, 1918, Henry F. Pierce, Lyda N. Swenson, and N. L. Pierce were partners for the purpose of raising a crop of corn planted by them on the Bradley ranch, in Contra Costa County. On the said day while the corn was planted, but not yet harvested, one of the partners, Henry F. Pierce, entered into an agreement in writing to sell to the plaintiff twenty-five tons of the corn from said crop for $1,000. This agreement was made with the knowledge and consent of the two other partners, and payments were made in accordance with its terms to the said Henry F. Pierce. The final payment was made by check mailed by the plaintiff from some place in Texas. A few weeks after the payment was made plaintiff met Henry F. Pierce and asked him if the check had been received. Pierce replied in the affirmative and told plaintiff then that "the corn was his." Thereafter and in the month of January, 1919, plaintiff asked the said Pierce about the corn he had purchased and Pierce replied that it would not be advisable to shell it at that time, as there was a good deal of wet corn in the market and it would be better to let this corn stand awhile. Again, in March of the same year, similar inquiry was made. During this time the corn was in the cribs on the ranch but had not yet been shelled nor had plaintiff's portion been segregated. On December 26, 1918, the defendant Swenson, desiring to raise additional funds for the harvesting of the corn, entered into an agreement with Henry F. Pierce whereby the said Pierce sold to the defendant Swenson all his interest in the corn crop remaining over and above the twenty-five tons of corn belonging to E. B. Kimball. In this agreement the defendant Swenson expressly agreed that the plaintiff was the owner of the twenty-five tons of corn and that he was entitled to have the same delivered to him in the manner provided in the written agreement made between him and Henry F. Pierce on the twenty-third day of May, 1918. The corn was shelled

in the latter part of May, 1919, and on the 6th of June
of the same year the defendants Swenson and N. L. Pierce
delivered the entire crop, consisting of seventy and one-half
tons, and including that belonging to plaintiff, to the de-
fendant C. S. Webber. This delivery was accompanied by
a bill of sale in which a consideration of $4,200 was recited.
It was, however, admitted by the parties concerned that no
consideration passed for the transfer, but that the defendant
Webber took possession of the corn at the instance and
request of Mrs. Swenson and with the consent of the remain-
ing partner, N. L. Pierce, for the purpose of disposing of
the entire crop and paying off certain creditors. At the
time the transfer was made it is claimed that a list of these
creditors was presented to the defendant Webber by Mrs.
Swenson. It is admitted, however, that in any list so pre-
sented the claim of plaintiff was not included. Soon after
the transfer to Webber was made he shipped the entire
crop to a warehouse in the city of Stockton, where he
caused it to be sold for $68.50 a ton, which was $28.50 a
ton in excess of the price paid by Kimball for the twenty-
five tons purchased by him. At the time of the trial he still
retained the proceeds of this sale. Prior to the trial and
prior to the time of the sale demand was made upon both
the defendants Swenson and Webber for the delivery of
the twenty-five tons belonging to plaintiff. In answer to
the demand made upon him the defendant Webber replied
that he could not make delivery without the consent of Mrs.
Swenson, and in answer to the demand made upon her Mrs.
Swenson replied that she would not make delivery because
the corn crop had been much smaller than they had antici-
pated. Neither of the defendants at the time demand was
made upon them denied plaintiff's title. Upon the stand
the defendant Webber disclaimed any interest as to any
portion of the corn except as to his claim as one of the
creditors of the partnership, while the defendant Swenson
not only expressly confirmed plaintiff's title by the paper
dated December 26, 1918, but admitted his ownership while
on the stand.

Briefly, the record discloses an executory contract to sell
a growing crop, a subsequent payment in full of the pur-
chase price, an indefinite attempt to transfer title followed
by a definite confirmation of title in writing, accepted by

all parties concerned as meeting all the requirements for
a complete vesting of title in the plaintiff. Thereafter it
appears that the crop did not come up to expectations, but
that the market price of the corn had greatly increased
over that paid by plaintiff. These conditions, unforeseen
at the time of the sale, brought about an attempted repudia-
tion and are no doubt the cause of the entire controversy.

Appellant has presented a number of highly technical
objections, which avoid the real issue of the case as
disclosed by the foregoing statement of facts. An effort is
made to present the issue of the trusteeship of the appellant
Webber for the benefit of certain creditors, but the issue,
if triable in a case of this nature, was not properly raised
in appellant's answer. The allegation therein was made
upon information and belief to the effect that the copart-
nership "is indebted" for debts incurred in said copartner-
ship to certain parties named. There was no allegation or
proof that any of the parties named as creditors were
such at the time any of the transactions between respondent
and appellants were had. An attempt was made to amend
the answer for the purpose of alleging that the appellant
Webber took possession of the entire crop at the instance
and for the benefit of the creditors of the copartnership.
The request for this amendment was made upon the ground
that it was to conform to the proof made at the trial. The
request for leave to amend in this particular was properly
denied by the court because the evidence was directly con-
trary to the allegations of the proposed amendment.

[1] There are but two other points raised by appellants
which require consideration: (1) The question of title, and
(2) the amount of recovery. As to the question of title,
it is significant that Mrs. Swenson did not in her answer
or at any stage of the proceedings assert title in herself to
the twenty-five tons of corn in question. On the other hand,
she had knowledge of the agreement to sell to Kimball either
before or immediately after the written agreement of May
23, 1918, was executed. Thereafter and on December 26,
1918, she expressly consented to the sale, confirmed the trans-
action, acknowledged Kimball's ownership, and consented to
make delivery according to the terms of the agreement of
May 23d. The issue presented by her answer is that on
June 6, 1919, she executed and delivered to the Webbers a

bill of sale to enable them "to care for and hold the property and its proceeds for those entitled thereto against the said copartnership and as between said copartners and their successors." It is then expressly alleged that the Webbers "make no claim whatever, except as herein stated, to the ownership of said corn as against the said creditors of said copartnership, nor as to twenty-five tons of said corn as against E. B. Kimball." The claim of Kimball is then alleged to rest upon a transfer to him by Henry F. Pierce "of all of said Henry F. Pierce's interest in said twenty-five tons of corn, which said transfer by said Henry F. Pierce to E. B. Kimball was made in the spring of 1918." An identical answer was filed by the appellant Webber, wherein he also waived all claim to the ownership of twenty-five tons of corn except as to his claim as a creditor of the copartnership and for costs of transportation, storage, and insurance upon the corn after it had been taken into his possession. As to the issue raised in the answers relating to the effect of the "transfer" by Pierce to Kimball made in the spring of 1918, it was wholly unsupported by any evidence and directly contradicted by the agreement of December 26, 1918, signed by Mrs. Swenson and made a part of her answer by reference.

It is immaterial to determine when title to the corn passed to Kimball—whether upon payment in full of the purchase price or through the oral statement of Pierce made prior to the written agreement of December 26th, by the demands for delivery made in January and March of 1919, which would constitute an acceptance by the purchaser, or by the demand made by Pierce as agent for Kimball, or by the demand made by Crofton before the corn was sold by Webber, or by the combination of all these acts with the written acknowledgment of ownership made by Mrs. Swenson. Manifestly, as between Kimball and Mrs. Swenson the former had the better title, and as to Webber, he could not obtain from Mrs. Swenson any better title than she had to convey. He was not an innocent purchaser for value; in fact, he was not a purchaser at all. Holding the corn solely as Mrs. Swenson's agent, and at her instance and request, he was charged with the knowledge of his principal. Demand for delivery was made upon him while the corn was still in his possession, and, by the terms of the agreement of May

23d, which was expressly agreed to by Mrs. Swenson, delivery should have been made within one week thereafter.

[2] As to the matter of damages, the complaint, which was filed on June 30, 1919, alleged that the corn was of the value of $1,500 and prayed for damages in that amount. The jury rendered a verdict in the sum of $1,677.50, which was the stipulated market price of twenty-five tons on the basis of $67.10 per ton at the ranch. The measure of damages for the wrongful conversion of personal property is presumed to be the value of the property at the time of the conversion, with interest, or the highest market value of the property at any time between conversion and the verdict, without interest, at the option of the injured party. (Sec. 3336, Civ. Code.) The appellants answered denying the conversion. They thus put in issue the question of damages, not merely as alleged in the complaint, but according to the measure specified in the code. The case was tried upon the theory that respondent was entitled to recover upon whichever basis the jury should determine, and at one stage of the proceedings counsel agreed that the measure fixed by the code applied to the case at issue. This is such a case as that contemplated by section 580 of the Code of Civil Procedure, which provides: ''The relief granted to the respondent, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue.'' The relief ''embraced within the issue'' was the damage for appellants' conversion. The answer having joined issue on this point, the judgment properly followed the measure of damages prescribed by the code for such cases. (*O'Donnell* v. *Kramer,* 65 Cal. 353, [4 Pac. 204]; *Johnson* v. *Polhemus,* 99 Cal. 240, 244, [33 Pac. 908]; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 480, [111 Pac. 360].)

The judgment is affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1921.

All the Justices concurred, except Sloane, J., who was absent.