[Civ. No. 8406. Third Dist. Aug. 3, 1954.]

A. GELLER, Respondent, v. CECELIA ANOLIK, as
Executrix, etc., Appellant.

Andrew J. Eyman, George Mellis and Robert H. Kroninger for Appellant.

Hawkins & Hawkins and J. W. Hawkins for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment decreeing respondent, the surviving husband of Gertrude Geller, deceased, to be the owner of a one-half interest in real property which half interest stood in the name of said decedent. Cecelia Anolik as executrix of the will of said decedent appeals.

Respondent and Gertrude were married April 30, 1946; both had been previously married to other spouses and had been divorced. Gertrude died April 5, 1948. When she married respondent he was then and continued to be during their marriage the record owner of a one-half interest in the subject real property. The other one-half was owned by Ben Weisman and wife. Weisman was respondent's nephew. These two executed a deed to their one-half interest on June 17, 1947, which deed conveyed the property to Gertrude, "a married woman, as her separate property." There was evidence to show that this half interest was to be sold, and that Gertrude learned of the impending sale shortly before her marriage to respondent, and suggested to him that in view of their intended marriage he and she should purchase that one-

half interest so that the whole of the property would be owned by them. At that time she had a thousand dollars which she then turned over to respondent. It was her separate property. She also had some bonds which she stated she would sell and turn over the proceeds to him. The half interest to be acquired from respondent's nephew and wife was priced at $3,600. When respondent received Gertrude's thousand dollars he placed it in his account, drew his check for $3,240, and deposited it with a title company. He also paid directly to his nephew and his wife the balance of the purchase price, that is $360. He testified that he and Gertrude had agreed that he should add to her thousand dollars and the proceeds of her bonds to be later received, sufficient money from his own separate property to complete the purchase price; and that they should own the property so bought equally. This would leave him owner of three-fourths of the title and Gertrude the owner of one-fourth. He testified further that Gertrude had the right to pay him the amount he put into the purchase whereupon she would own one-half interest and he would continue to own one-half interest in the whole title. Several months thereafter Gertrude sold her bonds and turned over to him $913.08, being the proceeds of the sale. She did not however, during her lifetime, pay to him any further sums to reimburse him for his part of the purchase price of the half interest, and when she died she devised her interest in the property to her son by her former marriage. Respondent testified that Gertrude and he agreed the deed should be taken in their two names. When he made the deposit of the purchase price other than that to be given direct to his nephew and wife, he signed no escrow papers and gave no instructions as to how the title was to be taken. He told Gertrude, however, to go to the title company and sign the escrow papers which Gertrude did, and the documents signed by her contained instructions by her to the title company to have the one-half interest conveyed to her alone. Respondent testified she did not tell him of this circumstance, and he did not know that the title was being so taken, but supposed that it was being taken as the two had agreed. He did not discover the way the title was taken until after the date of the deed. He was uncertain whether it was before or after the deed was recorded, but when he did discover, he did nothing about it because Gertrude had become ill and he did not want to disturb her. The title remained as taken until after Gertrude's death when he asserted his claim and made some attempt to adjust

the matter amicably, it being the contention of the appellant executrix that Gertrude had owned the full half and that respondent had no interest in it. He brought this action April 3, 1950, nearly four years after the date of the deed which had been recorded November 9, 1946. About the time that he received Gertrude's money he gave her two promissory notes in the principal sum of $1,000 each payable to her. He testified that these notes were a sort of security to her to show her investments in the property in case anything happened to him, such as his accidental death, before the transaction was completed. These notes were in the possession of the appellant executrix when the suit was filed. They had not been inventoried among the assets of the estate although an apparently undisclosed suit had been begun upon them.

Respondent's complaint contained two counts: The first alleged that on June 17, 1946, the Weismans conveyed to Gertrude one-half interest in the subject real property; that on that date respondent was the owner of a half interest in the same property; that the Weismans owned the other half and had agreed with respondent that they would sell for $3,600; that Gertrude advanced toward the purchase price of the half interest $1,913.08; that respondent executed to Gertrude a promissory note for $2,000 (the proof at the trial showed two $1,000 notes); that respondent advanced the balance of the purchase price, and the title was taken in the name of Gertrude; that by reason of the foregoing facts a mortgage was created in favor of Gertrude and against respondent; that respondent had always been and was willing to pay the note, but appellant executrix refused to accept the money and claimed that Gertrude was, at the time of her death, the owner of the half interest and of the note. From the foregoing allegations respondent prayed that he have judgment declaring him the owner of the half interest purchased from the Weismans; that the title was held in the name of Gertrude as security for the note; that the executrix be compelled to accept payment of the note and be compelled to deed the one-half interest to respondent.

By a second count respondent alleged that the Weismans sold a one-half interest to respondent and Gertrude; that the title was taken in the name of Gertrude alone; that the consideration was $3,600; that Gertrude furnished the sum of $1,913.08; that respondent furnished the balance, plus $51.80 title costs; that by operation of law respondent acquired a fractional interest in the half interest proportionate to the

respective contributions, that is that Gertrude became the owner of $\frac{1913.08}{3651.80}$ of the half interest purchased, and respondent became the owner of the balance of that half. Respondent prayed as to this count that the ownership be declared as alleged.

As we have noted, the testimony of respondent at the trial did not square exactly with the theory of either count in his complaint. His testimony was that the parties agreed they should own the property they were purchasing equally notwithstanding a disparity in the amounts contributed by each, and his testimony was inconsistent with a theory that he owned the property purchased and that Gertrude had a lien thereon to secure the repayment of her contribution.

The trial court accepted respondent's testimony that he and Gertrude were each to own and did own an equal interest in the property purchased, and ordered the executrix to convey respondent's half thereto to him; took an accounting of the income of the property; found that during a period covered by the accounting, respondent had received net proceeds of $2,729.42 of which he owed one-fourth to appellant as executrix less $210 theretofore paid. The court ordered respondent's notes cancelled and returned to him.

Appellant contends there is a presumption that title to property taken in the name of the wife alone is a separate property, and that in this case that presumption was not rebutted. In support thereof appellant asserts that the presumption (see Civ. Code, § 164) is conclusive, and may not be rebutted where the deed expressly declares that the property is taken by the wife as her separate property. The contention is untenable. ■ The statutory presumption is a disputable one and is not rendered conclusive by the circumstance that the deed recites the conveyance was made to the wife as her separate property. (*Halloran* v. *Isaacson*, 95 Cal.App.2d 357, 360-361 [213 P.2d 19].) Parol evidence was properly introduced in behalf of respondent to establish the true nature of the title taken in the name of his wife regardless of the fact that the instrument itself characterized her title as being that of sole and separate ownership. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905].) Said the court in that case:

". . . land may be shown to be community property even though it is granted to one spouse alone as his or her property in fee simple. [Citing cases.] Again, it may be shown

that husband and wife intended to take property as community property even though they accepted a deed drawn to them as tenants in common. [Citing cases.] It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property.''

A presumption arising from declarations contained in the grant to a spouse descriptive of the title conveyed by the instrument is disputable. The intent of the parties and not the form of the grant or the source of the funds is determinative and ''where title is taken in the name of the wife, the testimony of the husband that he did not intend to make a gift of his separate property . . . is sufficient, *if believed by the court,* to overcome the presumption declared by section 164 of the Civil Code.'' (*Halloran* v. *Isaacson, supra,* p. 362.) Respondent testified directly that when he contributed from his own funds to the purchase price of the subject property, he had no intention of making a gift to his wife. (*Whitaker* v. *Whitaker,* 137 Cal.App. 396, 399 [30 P.2d 538].) We hold that the testimony of respondent, together with the other circumstances mentioned above, substantially supports the court's findings as to the title actually taken by the wife notwithstanding the form of the conveyance.

Appellant further contends that the evidence is insufficient to support the court's finding it was intended by the parties each would own a half interest in that which was purchased. Herein appellant states that respondent's testimony is subject to much internal conflict and is confused; that he sometimes refers to the transaction as a loan to his wife; that the testimony of his deposition and his testimony at the trial are in conflict as to whether he instructed the title company that his wife was to take title alone. It is true that there was considerable conflict contained within the body of respondent's testimony, and as we have noted, there was conflict between his testimony as to the intention of the parties that each should own one-half of that which they were buying, and the allegations of his complaint. But these were matters for the trial court to determine and if, notwithstanding such conflicts, the trial court elected to believe respondent's testimony at the trial, it was free to do so. Its conclusions as to the truth being supported by substantial evidence cannot be attacked here notwithstanding the fact that in arriving at such conclusion the trial court may have been required to discard some parts

of respondent's testimony. The arguments here made in this respect were properly to be made, and no doubt were made, to the trial court.

■ Appellant argues that the court's determination as to the part of the title which each party was supposed to take must find its support, if any support it has, in section 853 of the Civil Code which provides that when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. The court, however, was not limited to the type of trust referred to in the cited code section; for, as we have seen, husband and wife can make many agreements between themselves, fix their interests in real property as they wish, and may do this notwithstanding apparent conflict between such agreements and the form of the conveyance by which they acquire title, and notwithstanding disparity between amounts contributed from their separate property by each.

■ It is true that respondent pleaded that definite contributions had been made by each and that the title had been taken in the name of the wife alone, and asserted as a conclusion of law that he was entitled to have it decreed that he and she took title exactly in proportion to their differing contributions. But from the outset respondent's testimony was that the title had been taken under an agreement that each was to be equal in ownership. No objection was made that such testimony was without the issues framed by the pleadings and the court, having jurisdiction in equity of the parties and the cause, could in the end decree the title to be held in equality, notwithstanding that such relief exceeded to some extent the relief specifically asked for in plaintiff's pleading. (*Zellerbach* v. *Allenberg,* 99 Cal. 57, 68 [33 P. 786]; *O'Melia* v. *Adkins,* 73 Cal.App.2d 143, 148 [166 P.2d 298]; *Knox* v. *Wolfe,* 73 Cal.App.2d 494, 505 [167 P.2d 3].) For the same reason we cannot uphold appellant's claim that the court lacked authority to order the two notes cancelled and delivered to respondent. ■ "Under a prayer for general relief in an equitable proceeding . . . the court may grant any relief conformable to the case made by the pleadings and the evidence although it may not be the relief asked by special prayer." (*Knox* v. *Wolfe, supra,* 505.) ■ The issue as to the notes was fully tried and they were shown satisfactorily to have been given to Gertrude solely to protect her and for

no other good or valuable consideration. It was equitable to end litigation about them in this action.

Appellant contends that as a matter of law respondent was guilty of such laches in bringing his action as to bar him from relief in equity. ▮ Where the action is brought within applicable statutes of limitation, the issue of laches is one for the trial court to resolve from the facts.

"There is no artificial or hard-and-fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. The question must be determined by a consideration of all the facts and circumstances of the particular case. Laches is a question of fact, on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the chancellor." (10 Cal.Jur., Equity, § 64, p. 526, and cases cited.)

Although respondent testified that he learned of the form of the conveyance and its conflict with the agreement of the parties shortly after the execution of the deed and before its recordation some six months later, yet he said that he did not take the matter up with his wife because she had become ill from the disease which caused her death. In view of these circumstances and the relationship of the parties, it was for the trial court to determine whether or not it would find respondent to have been guilty of such laches as to bar his recovery.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied August 31, 1954, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1954.