[S. F. No. 19288. In Bank. Nov. 8, 1955.]

EULA MAE SINGLETON, Respondent, v. MANUEL SMITH PERRY, as Administrator With the Will Annexed, etc., Appellant.

*Assigned by Chairman of Judicial Council.

Theodore M. Monell and William Klein for Appellant.

Pierre J. Ibos and James A. Himmel for Respondent.

SCHAUER, J.—Defendant S. W. Corlett[1] appeals from a judgment pursuant to a jury verdict against him in the

---

[1]After defendant Corlett took this appeal he died and the administrator of his estate was substituted as defendant. References to defendant in this opinion are to Corlett.

amount of $25,000 in an action for malicious prosecution and for false imprisonment. Plaintiff brought two such actions, the present action, which is based upon defendant's charge that plaintiff stole a Cadillac automobile, and a second action, which is based upon defendant's charge that plaintiff stole rings, luggage, and other personal property.[2] As a result of the two charges plaintiff underwent a single arrest, imprisonment and a preliminary hearing which resulted in dismissal of the charges. The two civil actions were tried together. Verdict and judgment in the second action were for defendant and no appeal was taken.

The principal issue is whether, in view of the fact that the arrest and detention for the claimed theft of the automobile, on which the present action is based, were simultaneous with the arrest and detention which the jury in the second action found justified, plaintiff has shown in the present action that she was damaged in any measurable amount, or at all. Defendant also contends: the evidence does not support the verdict for plaintiff in that it establishes that the Cadillac belonged to defendant; the verdict in the second action (in which no appeal was taken) is inconsistent with the verdict in this action; the trial court erred to defendant's prejudice by instructing the jury that plaintiff sued for a total of $400,000 when in fact the total amount for which plaintiff prayed was only $200,000. We have concluded that each of these issues must be resolved against defendant.

## The Evidence

Defendant Corlett and plaintiff were not married but lived together as husband and wife in San Francisco from 1947 until the quarrel in 1952 which led to this action. Defendant supported plaintiff and gave her many presents. Among these was a Buick automobile. Plaintiff traded this car in as part payment on a Cadillac automobile. Defendant was angry about plaintiff's purchase of the Cadillac. Because of his anger plaintiff went to Los Angeles in the Cadillac. While plaintiff was in Los Angeles defendant paid the balance due on the Cadillac and had the "pink slip" of legal ownership issued in his name; plaintiff remained the registered owner. Defendant told plaintiff, "I paid the car off for you" and "I

---

[2]The pleadings in the second action are not before us but the briefs of plaintiff and defendant agree that the complaints in the two actions are substantially identical except for the allegations of the criminal charges in respect to the description of the personal property charged to have been stolen.

paid the car note off so you don't owe anything on the car.'' Defendant persuaded plaintiff to return to San Francisco and they continued to live together but they frequently quarreled.

While defendant was ill and hospitalized they had an argument. Plaintiff took the Cadillac, luggage (which she testified did not belong to her), rings and other articles of personal property (which are the subject of conflicting testimony as to whether they had been given to plaintiff by defendant), and went to Cleveland, Ohio. Defendant reported the matter to his attorney, then to a police inspector, then to a deputy district attorney. Defendant swore to two complaints against plaintiff, one charging theft of the car (Veh. Code, § 503) and one charging grand theft of other articles of personal property. Defendant gave the police various addresses to which he thought plaintiff might have gone. The police found her in Cleveland. She was jailed there for nearly a month, returned to San Francisco in custody of a police matron, and jailed in San Francisco for about a week. As previously stated, after preliminary hearing both criminal cases were terminated in favor of plaintiff (defendant in the criminal cases) by dismissal. On the issue of damages, plaintiff testified to her mental and physical suffering, humiliation, damage to her reputation among ''friends that looked on me as decent and respectable,'' and her difficulties in obtaining employment.

Defendant recognizes the familiar rule that where the evidence is in conflict the appellate court will not disturb the verdict of the jury, but asserts that ''in view of the peculiarity of the particular situation existing in the case at bar, appellant urges that the record undisputedly shows that he was the owner of the Cadillac and, therefore, entitled to pursue the same in the hands of plaintiff and hence that his procedure in having her arrested constitutes neither false arrest nor can the ensuing criminal proceedings constitute malicious prosecution, even though she was acquitted at the hearing.''

Defendant's words as to ''paying the car off'' for plaintiff, followed by plaintiff's possession of the car, could be construed as an executed gift of all defendant's interest in the automobile, in the absence of the special statutory rules as to transfer of legal title to automobiles. ▆ But ''Old rules respecting transfer of personal property give way to those set forth in the Vehicle Code. [Citation.]'' (*Pike* v. *Rhinehart* (1952), 112 Cal.App.2d 530, 532 [246 P.2d 963].) The

494

transaction as to the Cadillac took place, as previously stated, in 1952. Applicable sections of the Vehicle Code as amended in 1951 are quoted in the margin.[3] Because of those sections no transfer of legal ownership to plaintiff was effected. The parties themselves, however, on the view of plaintiff's evidence which the jury impliedly accepted, could have believed that defendant had given plaintiff the right to use the automobile as she desired and therefore he had no right to use criminal process to obtain its possession.

As stated, plaintiff's action is both for false imprisonment and for malicious prosecution. As the court says in *Neves* v. *Costa* (1907), 5 Cal.App. 111, 117-118 [89 P. 860], " 'False imprisonment is the unlawful violation of the personal liberty of another' (Pen. Code, § 236), the interference with the personal liberty of the plaintiff in a way which is absolutely unlawful and without authority. Malicious prosecution is procuring the arrest or prosecution of another under lawful process, but from malicious motives and without probable cause.

 "The provocation, motive and good faith of the defendant in an action for false imprisonment constitute no material element in the case and can be considered only where punitive or exemplary damages are asked, and then only as affecting the measure of such damages. On the other hand, malice and want of probable cause are the gist of the action for malicious prosecution. Without allegation and proof of both, the action will fail. [Citation.]

 "No one can recover damages for a legal arrest and conviction; therefore, in cases of malicious prosecution it

---

[3]Section 175, par. (a): "Upon a transfer of the title or any interest of the legal owner or owner in or to a vehicle registered hereunder, the person whose title or interest is to be transferred shall write his signature, and the transferee shall write his signature and address, in the appropriate spaces provided upon the reverse side of the certificate of ownership issued for such vehicle."

Section 176: "It is unlawful for any person to fail or neglect properly to endorse, date and deliver the certificate of ownership to a transferee who is lawfully entitled to a transfer of registration."

Section 177: "Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

Section 186 (as enacted in 1935): "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass" until the parties have complied with described procedures as to the "pink slip" of legal ownership and the "white slip" of registration.

becomes necessary to await the final determination of the action. But the same principle does not apply to an action for false imprisonment, as the form of action is based upon an illegal arrest and no matter *ex post facto* can legalize an act which was illegal at the time it was done. ■ From this it will be seen that one of the essential elements of a complaint for malicious prosecution is that the proceeding upon which it is based has finally terminated in favor of the plaintiff, while it is equally apparent that this is not a necessary or proper allegation in an action for false imprisonment. [Citations.]'' (Accord, *Barrier* v. *Alexander* (1950), 100 Cal. App.2d 497, 499 [224 P.2d 436]; *Collins* v. *Owens* (1947), 77 Cal.App.2d 713, 715-716 [176 P.2d 372].)

■ It is to be assumed, in view of the instructions given, that the verdict is based upon the tort of malicious prosecution, rather than the tort of false imprisonment. Concerning false imprisonment the jury were told only that it is defined by the Penal Code (§ 236) and is ''the unlawful violation of the person and liberty of another,'' and that ''the interference *of* the personal liberty of Eula Mae Singleton was upon a complaint made and a warrant issued by a duly constituted legal authority.'' There was no instruction as to damages recoverable for the tort of false imprisonment.

On the other hand, the jury were instructed at some length concerning the tort of malicious prosecution, particularly the elements of probable cause and malice and defendant's claim that he acted on the honestly requested advice of counsel after a full and fair presentation of the facts. [10] And they were correctly told (see *Ray Wong* v. *Earle C. Anthony. Inc.* (1926), 199 Cal. 15, 18 [247 P. 894]) that damages for such tort ''may include loss of time and liberty, injury to reputation, if any, mental suffering, as well as for bodily harm, if any.''

In this state of the instructions it is to be assumed, as indicated, that the jury followed the charge as to malicious prosecution and found the existence of facts which constitute that tort.

### Asserted Inconsistency of the Verdicts in Plaintiff's Two Actions

■ The verdicts of the jury in the two civil actions do not appear to be necessarily and as a matter of law inconsistent. As previously stated, the jury could have concluded that defendant gave plaintiff the right to use the Cadillac

automobile as she saw fit and therefore had no proper ground of complaint when she took it. The jury could have believed that defendant's motives in pressing the charge with reference to the automobile were improper. Thus, it could have determined that the elements of a cause of action for malicious prosecution were shown (see *Jaffe* v. *Stone* (1941), 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]): a judicial proceeding terminated in plaintiff's favor; the existence of facts which show lack of probable cause; and malice. On the other hand, the jury could have believed that defendant acted without malice and with probable cause in pressing the charge as to the other property which defendant had not given plaintiff (luggage which plaintiff herself testified was not hers and other items of personal property which defendant testified belonged to him).

Defendant contends that even though the actions were consolidated for trial only, and even though plaintiff did not appeal in the second action, both actions are before this court, and this court should reconcile the assertedly inconsistent verdicts (citing *Ferroni* v. *Pacific Finance Corp.* (1943), 21 Cal.2d 773, 780 [135 P.2d 569]; *Southern Pac. Co.* v. *City of Los Angeles* (1936), 5 Cal.2d 545, 548 [55 P.2d 847]; *Estate of McSweeney* (1951), 107 Cal.App.2d 140, 144 [236 P.2d 846]). Since the verdicts are not inconsistent, we need not discuss this contention.

*Damages Resulting from Malicious Prosecution of or False Arrest under a Criminal Charge Where Plaintiff is Simultaneously Arrested and Prosecuted under a Justified Charge*

As stated, the judgment in the second case became final without appeal. It is a conclusive determination that plaintiff has no cause of action on account of the charge of theft of the rings, luggage, and other personal property. According to defendant, plaintiff's damages were not shown to have been proximately caused by the criminal charge involved in the present action as opposed to the charge involved in the second action. (Citing Civ. Code, § 3333: The measure of damages for a tort, except where otherwise expressly provided in the code, is "the amount which will compensate for all the detriment *proximately caused thereby* . . ." Italics defendant's.) Defendant says, "it was necessary for the plaintiff to show that she sustained damages as a result of the charge of stealing the automobile, as distinguished from the charge of stealing the jewelry. . . . [I]f the particular

charge made in the action in which the jury returned a verdict in respondent's [plaintiff's] favor were eliminated, she would, nevertheless, have suffered exactly the same experiences, with no right of recompense or recovery. There is not one scintilla of evidence in the record which shows that by reason of the automobile charge plaintiff sustained any particular damage. Her whole cause is based upon her imprisonment predicated upon the two charges. It is conceivable that if a person were imprisoned on two charges, entirely dissimilar, a person might sustain damages by reason of being charged with some crime of horror as against a more conventional crime, even though lawfully incarcerated for the conventional crime, but in the instant case both charges were felonies and there is no reason that respondent would have suffered additionally or less because of the making of either charge by itself.''

Basically, the problem is this: Must plaintiff, having shown that she was damaged by the prosecution, go further and show specifically that her damage was attributable to the prosecution on the unjustified charge rather than that on the justified charge? ▉ It is stated in *Boogher* v. *Bryant* (1885), 86 Mo. 42, 49, 50, ''The authorities show, as we think, that, in order to maintain an action like this [malicious prosecution], 'it is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account the less injurious, and, therefore, constitute a valid cause of action.' [Citations.]

. . . . . . . . . . . . .

''[I]t is manifest that whatever difficulty, or impossibility even, there may be, in discriminating between the injuries, resulting from the good and bad counts, thus improperly blended, is chargeable to the wrongful act of the defendants themselves, and, upon principle, it would seem that they should not now be permitted to plead their own wrong in their own justification. If, by their wrongful acts, the plaintiff could not readily apportion his expenses, or dissect his trouble, care, anguish and vexation, and apportion them among the five counts in the information, it would seem cruel to hold that no basis could, therefore, be afforded by which to adjust the damages to the injuries sustained.

''Indeed, it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his

damages between the two with delicate nicety. Such, we think, is not the law.''

We agree with the foregoing reasoning, and conclude that plaintiff, having shown that defendant maliciously joined an unjustified charge with a justified charge, does not have the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious.

### Erroneous Instruction as to Amount of Damages Prayed for

The trial court of its own motion instructed the jury as follows: '' [The complaints] asked for $100,000 for general damages for pain, suffering, confinement, and $100,000 for punitive damages or damages by way of example. Both complaints ask for the same amount, $100,000 for general damages and $100,000 for punitive damages. . . . As I said to you before, the full amount of the two complaints is $400,000. $100,000 for general damages on one case and $100,000 for punitive damages . . .''

In fact, in each complaint plaintiff alleged actual damages of $100,000 in the first cause of action; in the second cause of action she alleged no actual damages but asked punitive damages of $100,000; she prayed for only $100,000. The jury awarded $10,000 general damages and $15,000 punitive damages.

Defendant complains that it was prejudicial error to tell the jury that ''the full amount of the two complaints is $400,000,'' because the amount of plaintiff's recovery was limited to $200,000, the total amount for which the prayers ask. Plaintiff argues that the instructions as to damages quoted *supra*, correctly state the law because section 580 of the Code of Civil Procedure provides, ''The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue''; and, as plaintiff says, ''the prayer of a complaint for relief is no part of the statement of the cause of action and should, where necessary be disregarded'' (see *Merlino* v. *West Coast Macaroni Mfg. Co.* (1949), 90 Cal.App.2d 106, 112 [202 P.2d 748]; *Hoffman* v. *Pacific Coast Const. Co.* (1918), 37 Cal.App. 125, 129-130 [173 P. 776]).

It is the usual rule that in a contested case plaintiff may secure relief justified by the allegations of the complaint

and the evidence, even though the relief is greater than or different from that demanded. (E. g., *Nathan* v. *Dierssen* (1913), 164 Cal. 607, 611 [130 P. 12] ; *Title Ins. & Trust Co.* v. *Ingersoll* (1910), 158 Cal. 474, 480 [111 P. 360] ; *Johnson* v. *Polhemus* (1893), 99 Cal. 240, 244-245 [33 P. 908] ; *Von Schrader* v. *Milton* (1929), 96 Cal.App. 192, 198 [273 P. 1074] ; *Potter-Huffman Land & Livestock Co.* v. *Witcher* (1920), 48 Cal.App. 93, 96-97 [191 P. 725].) In upholding awards of relief not specifically prayed for, the courts sometimes particularly note that there is a prayer for general relief (such as the prayer in the present complaint "for such other and further relief as to the Court may seem just and proper"). (E. g., *Rogers Dev. Co.* v. *Southern Calif. Real Estate Inv. Co.* (1911), 159 Cal. 735, 741 [115 P. 934, 35 L.R.A.N.S. 543] ; *Booker* v. *Aitken* (1903), 140 Cal. 471, 473 [74 P. 11] ; *Mock* v. *City of Santa Rosa* (1899), 126 Cal. 330, 341 [58 P. 826] ; *Geller* v. *Anolik* (1954), 127 Cal.App.2d 21, 27 [273 P.2d 29] ; *La Jolla Casa de Manana* v. *Hopkins* (1950), 98 Cal.App.2d 339, 349 [219 P.2d 871] ; *Katz* v. *Driscoll* (1948), 86 Cal.App.2d 313, 318 [194 P.2d 822] ; *Morgan* v. *Veach* (1943), 59 Cal.App.2d 682, 692 [139 P.2d 976] [complaint prayed for injunction and general relief; decree awarding injunction or, in the alternative, damages, affirmed] ; *Churchill* v. *Kellstrom* (1943), 58 Cal.App.2d 84, 90 [136 P.2d 602] [damages can be awarded in quiet title suit, upon the theory of inverse condemnation, under prayer for general relief, even though no damages prayed for] ; *Martin* v. *Pacific Southwest Royalties, Inc.* (1940), 41 Cal. App.2d 161, 172 [106 P.2d 443] ; *Sintzel* v. *Wagner* (1931), 119 Cal.App. 335, 337 [6 P.2d 293].) ▬ But it has been held that a court cannot properly award an amount of damages in excess of that for which the complaint prays. (*Meisner* v. *McIntosh* (1928), 205 Cal. 11, 13 [269 P. 612] [distinguishing *Kimball* v. *Swenson* (1921), 51 Cal.App. 361, 366 [196 P. 781], which says that relief in an amount exceeding that prayed for was "embraced within the issue" and therefore could be allowed under section 580 of the Code of Civil Procedure] ; *Crofoot* v. *Blair Holdings Corp.* (1953), 119 Cal. App.2d 156, 195 [260 P.2d 156] ; *Frost* v. *Mighetto* (1937), 22 Cal.App.2d 612, 616 [71 P.2d 932] ; *Monterey Park Coml. & Sav. Bank* v. *Bank of West Hollywood* (1932), 125 Cal. App. 402, 409 [13 P.2d 976] ; *Brown* v. *Ball* (1932), 123 Cal. App. 758, 768 [12 P.2d 28] ; *contra, Du Pont* v. *Allen* (1930), 110 Cal.App. 541, 543 [294 P. 409] [see *Crofoot* v. *Blair*

*Holdings Corp.* (1953), *supra,* p. 196 of 119 Cal.App.2d, footnote]; *McKesson* v. *Hepp* (1923), 62 Cal.App. 619, 620-621 [217 P. 802].)

▪ ▪ Regardless of the merits of plaintiff's position contrary to the cases which hold that an amount of damages in excess of that prayed for cannot be awarded, no harm appears to have resulted from the instruction, for the verdict was for an amount well within the limit of the amounts alleged as well as the amounts for which the prayers ask. (*Eastlick* v. *City of Los Angeles* (1947), 29 Cal.2d 661, 674 [177 P.2d 558, 170 A.L.R. 225]; *cf. Redwing* v. *Moncravie* (1933), 131 Cal.App. 569, 578 [21 P.2d 986].)

For the reasons above stated, the judgment is affirmed. Defendant has also noticed appeals from an order denying his motions, in the alternative, for judgment notwithstanding the verdict or for a new trial. The order denying the motion for judgment notwithstanding the verdict is affirmed. (See Code Civ. Proc., § 629, last paragraph; MacDonald, New Procedure Affecting Motions for New Trial (1951), XXVI State Bar Journal 299, 303.) The order denying the motion for new trial is not appealable (Code Civ. Proc., § 963; *Armenta* v. *Churchill* (1954), 42 Cal.2d 448, 451 [267 P.2d 303]; *Pipoly* v. *Benson* (1942), 20 Cal.2d 366, 368 [125 P.2d 482, 147 A.L.R. 515]), and the purported appeal from such order of denial is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied December 8, 1955.